In the fifth year of the State.

——— o ◈ o ———

PRESENT:

HON. JOSEPH WILLIAMS, CHIEF JUSTICE.
" JOHN F. KINNEY, } JUDGES.
" GEORGE GREENE, }

——— o ◈ o ———

## Scott v. Babcock.

An assessment book. not admitted in evidence, in part proof of a tax title, without first showing the appointment of the equalizing officers. Greene, J. *contra.*

A tax sale, not legal unless all the requirements of the statute have been strictly performed

Nothing can be presumed in favor of the proceedings of officers, in order to sustain a tax title. Greene, J. *contra.*

A tax deed for delinquent taxes of 1843, not admissible in evidence, without proof of the assessment, collector's return, &c.

Under the revenue laws of 1844, lands are not subject to sale for taxes, until *three* years after the taxes have become due, and remain unpaid. *Abbe* v. *The State,* 1 G. Greene, 225, *contra.*

ERROR *to Van Buren District Court.*

*Opinion by* KINNEY, J.   This is an action of right, brought by Babcock, to recover possessioon of lot six, in block one in the city of Farmington.   Plea, general issue ; jury trial, and verdict for plaintiff.   A bill of exceptions was taken by the plaintiff, from which it appears that in order to establish his right to said lot, he introduced a patent from the United States to one Abel Gallard, which embraced the lot in controversy.   The plaintiff showed a conveyance from Gallard to Bateman, from Bateman and wife to Thomas J. Babcock, from Babcock to Benjamin and wife, and from said Benjamin and wife to plaintiff, by deed bearing date April 17, 1845.   He then proved the defendant in possession ; and, having introduced testimony in relation to the rents and profits, rested.

The defendant then proceeded with his testimony, premising that he relied upon tax titles under two different sales and deeds.   He first offered to introduce the assessment book for said county of Van Buren, for the year 1843 ; said lot six constitutes a part of said assessment roll.   The defendant proposed to follow this up with the after acts of the revenue officers of the county, so as to make out a tax title to the lot, under a sale for the taxes due thereon, for the year 1843.   To the introduction of which plaintiff objected, until it was shown that certain .persons had been appointed in accordance with the requirements of the seventh section of an act to provide for assessing and collecting county and territorial revenue, approved February 13, 1843, to act in conjunction with the assessor in equalizing assessments, and that they filed their report.   His objection the court sustained, and the appraisement roll was not received or permitted to be read, as the defendant did not propose to

accompany the assessment with proof of such appointment, to which the defendant excepted. The defendant then offered to introduce a collector's deed for said lot six, executed in accordance with a sale, made for the delinquent taxes due for the said year 1843, dated June 10, 1848, unaccompanied by proof of any preliminary steps of assessment, warrant or collector's return of delinquent list, to which plaintiff objected and the court sustained the objection.

The defendant then offered to introduce a treasurer's deed for said lot, dated June 27, 1847, from which it appeared that at the May term, 1847, of the district court, the state of Iowa recovered judgment against said lot, among others, for the taxes, interest and cost due the state, for the year 1844. Upon an order of sale, the said lot was, on the 27th of May, struck off and sold to the defendant. To the introduction of this deed the plaintiff objected, on the ground that it should be preceded by evidence of the assessment of taxes for that year, and of the warrant of the treasurer, and of the return of the delinquent list, and also on the ground that the deed was not *prima facie* evidence of the regularity of the proceedings. These objections were overruled. Plaintiff then objected to the deed for the reason that upon the face thereof, it appeared to be void in this, that the report of the treasurer of the delinquent list, and the judgment of the court and order of sale, were made before the time limited and provided by law. That no return, judgment and order of sale could legally take place until one year from the time mentioned in said deed ; which objection the court sustained, and rejected the evidence offered by the defendant.

These rulings of the court are assigned for error. They present three questions for adjudication.

1. Was the testimony offered by the defendant unaccompanied by evidence showing the appointment of certain persons to act with the assessor in equalizing the assessment, and without evidence that they filed their report, properly rejected ?

2. Was proof of the assessment, warrant and collector's return of the delinquent list, necessary to the introduction. of the deed as evidence?

3. Was the second deed offered in evidence made for delinquent taxes due on said lot for the year 1844, void upon its face, and does it appear from the recitals therein contained, that the return, judgment and sale took place sooner than the time prescribed by the statute?   ·

The statute by which it is claimed that the testimony under the first proposition was properly rejected, after providing for the election of township assessors, enacts "that immediately after the election and qualification of each assessor he shall commence assessing all the taxable property, subject to taxation, within his township or precinct, as the case may be, and shall deliver to the board of county commissioners, on or before the first Monday in July thereafter, a full and complete assessment roll, which roll shall set forth a precise description of land owned by each person therein named, which specification shall correspond with the plan or map of the original survey, and the number of acres specifically noted in a column by itself; and further, said lands and all town lots shall be valued at their true value in cash, with all the improvements thereon, by the present assessor, now elected in each county, with two other persons of good qualifications, to be appointed by the county commissioners of the proper county at their April term, one in each county commissioner's district other than that in which the assessor lives." "Such appraisers when so appointed, it should be their duty to attend with said assessor on the second Monday in June, at the county seat of said county, then and there to make said valuation as nearly equal as may be, which valuation when examined and corrected by the board of county commissioners, shall be recorded in the clerk's office of said board, and remain as a fixed value for five years." R. S., p. 548, § 7.  The court held that under this statute it was necessary to show

Scott *v.* Babcock.

the appointment of the equalizing officers, to act with the assessor, as a necessary link in the chain of proceedings and without proof of this, the testimony offered could not be introduced. The statute requiring the appointment of such officers is as imperative as any other provision, and as indispensable a pre-requisite as the assessment itself. It is an essential step in the progress of the proceedings, and proof that it had been observed was indispensable.

A sale of lands for delinquent taxes can only legally take place after all the requirements of the statute, from the first proceeding under it, up to the last, have been strictly performed. Nothing can be supplied by intendment. Those things which the statute requires to be done, must be done, or nothing passes by the sale. It is only upon *condition* of a compliance with the statute, that it authorizes a sale to be made, and hence if the *conditions* have not been complied with, the sale is unauthorized and void. The first evidence that the defendant proposed to introduce was for the purpose of establishing a tax title for the delinquent year 1843, and for this purpose the assessment book was offered with a proposition to follow it up with the subsequent acts of the officers.

The statute was approved thirteenth February, 1843, and took effect after passage, except that portion which related to the election of township assessors, which took effect on the first day of April, 1844. Hence the county assessors under the prior law were continued in office until the election of the township assessors. At the meeting of the board of county commissioners, at their April term *next* after the passage of the act, the two persons were to be appointed, who, with the assessor then in office,—to-wit : the county assessor—were to meet at the county seat, on the first Monday of June following, and then and there make the valuation, &c. This valuation when corrected was to be recorded and remain a fixed valuation for five years. This was to be done in 1843, before the township assessors came into

I

office, and therefore the lot in controversy was subject to said valuation, for the assessment of the tax for that year. The construction given this statute by counsel for plaintiff in error, that this valuation was not to apply for the year 1843, we think entirely unauthorized. By express language, the persons were to be appointed at the April term, 1843, and in June 1843, the valuation was to be made. It having been necessary then for the lot in question to have been valued by the appraisers appointed for the purpose in conjunction with the county assessor before the proper tax could be levied for the year 1843 ; it follows, as a necessary result, that unless so valued the levy of the tax would be illegal. It was consequently incumbent on the defendant in order to establish his title, to show that this provision of the statute had been complied with. The statute requires the appraisement when made and corrected, to be recorded. If it existed, it was within the power of the defendant to produce it. It constituted a necessary link in his chain of title, an essential pre-requisite to the validity of his deed. The ruling of the court excluding the testimony without this proof was correct.

It will be recollected that the court ruled the deed made for taxes due on the lot for said year, inadmissible, without proof of assessment, &c., as embraced in our second position. This decision we think was right. There is no provision in the statute of 1843, that such deed shall be *prima facie* evidence of the legality of the proceedings under which the sale was made. The plaintiff made out a perfect title to the lot, from the government of the United States, the common source of all title in this country, down to himself. The legality of this title the defendant does not controvert, but relies upon a county officer's deed to establish a junior title in himself. That deed depends for its vitality upon the legality of the proceedings of certain ministerial officers, and a strict observance by them, of the provisions of the statute. As nothing can be presumed in favor of the

Scott v. Babcock.

proceedings of these officers, and as making the deed is but one necessary act among many others, to convey title, it is clear that it is incumbent upon the defendant to prove all the pre-requisite proceedings, in order to exhibit a valid title. It would not have been sufficient for the plaintiff to introduce his deed from Benjamin and wife without showing a connected chain of conveyances from the government down to him ; and if it had appeared that any one of the conveyances was defective, his title would not have been perfect. It was just as necessary for the defendant, to trace his title to its original source, and to have established by testimony, that all of those acts which were necessary to authorize a sale and convey title, had been performed ; and if any one had been omitted, an incurable defect in his title would at once be apparent. It is not the collector's deed that could divest Babcock of his title, and invest it in Scott ; but if the title changed at all from one to the other, it was by virtue of a compliance with certain regulations of the statute relative to the public revenue. A compliance with these regulations, constituted the source and basis of the defendant's title and unless he could show *such compliance* his deed could be of no avail in defeating a title regularly derived from the United States.

The twenty-first section of the act, provides that if the taxes are not paid, the collector may proceed to collect the same by distress of goods and chattles. The twenty-second section, that if no goods and chattles are found, the collector shall give notice of the day and place of sale, &c. The twenty-third section, that the collector shall file with the clerk the verification of the printer, that the advertisement has been published, &c. The twenty-fourth section, that after he has filed evidence of publication as required by the preceding section, that he shall proceed in pursuance thereof to sell, &c. The twenty-fifth section, that when any lot or tract of land shall be sold, the collector shall give the purchaser a cercificate describing the piece of land with

certainty, and the time when such purchaser will be entitled to a deed, &c. It further provides that the collector or his successor in office, " at the time such deed is demanded, shall, at the expiration of two years, execute to said purchaser or his assigns, in the name of the territory of Iowa, a conveyance of the lot or tract of land so sold as *aforesaid*, and described in said certificate, which conveyance shall vest in the person to whom it is given, an absolute estate in fee simple," &c.

Grant that all of the other provisions of the statute had been adhered to up to the time when it becomes the duty of the collector to proceed to the collection of the taxes, he must then proceed to collect the same by distress and sale of the goods and chattels. If the delinquent has goods and chattels, out of which to make the tax, the officer cannot proceed against the land. His power to give notice of the time and place of the sale of the realty only arises when " no goods and chattles can be found, out of which to make the taxes." The fact that goods and chattels cannot be found, must alone lay the foundation for all subsequent proceedings, and if such is not the fact, every act performed by the officer to sell the land will be void. This is a condition precedent to any action of the officer towards exposing the land for sale, and on its observance his power to advertise and sell depends. *Gauntley's Lessee* v. *Ewing*, 3 How. 707. *Thatcher* v. *Powell*, 5 U. S. Cond. 28 ; *Stead* v. *Course*, 2 U. S. Cond. 151 ; *Barker* v. *Smith*, 4 Blackf. 70.

It will be observed that the statute " requires the sale to be made as *aforesaid*,—referring to the antecedent proceedings,—before the officer is authorized to make the deed. Such deed, when so made, is to vest in the purchaser an absolute estate in fee simple. In the case of *Kellogg* v. *McLaughlin*, 8 Ohio, upon a similar provision in the statute in relation to the transfer of the estate to the purchaser, the court remark " that a penalty so severe as this cannot with propriety attach, unless the officers of the government

—its agents—have strictly complid with and fulfilled their duty. The law must *have been strictly performed.*" In the case of *Atkins* v. *Kinman,* 20 Wend. 241, it was held that " when lands are to be taken under a statute authority, in derogation of the common law, every requisite of the statute, having the semblance of benefit to the owner, must be strictly complied with."

And in the case of *Beaty* v. *Knowler,* 4 Peters, 152, Mr. Justice M'Lean remarks, " that the power to impose a tax on real estate, and to sell it when there is a failure to pay the tax, is a high prerogative and should never be exercised when the right is doubtful." And in the case of *I harp* v. *Spain,* 4 Hill, 81, Mr. Justice Bronson, in a very able and elaborate opinion, says : " Every statute authority in derogation of the common law to divest the title of one, and transfer it to another, must be strictly pursued or the title will not pass. This is a mere naked *power* in the corporation, and its due execution is not to be made out by intendment; it must be proved. It is not a case for presuming that public officers have done their duty, but what they have in fact done, must be shown. The recitals in the conveyance are not evidence against the owners of the property, but the fact recited must be established by proof *aliunde.*

As the statute has not made the conveyance *prima facie* evidence of the regularity of the proceedings, the fact that they were regular must be proved, and the *onus* rests on the purchaser. He must show, step by step, that every thing has been done which the statute makes essential to the execution of the power. It matters not that it may be difficult for the purchaser to comply with such a rule. It is his business to collect and preserve all the facts and muniments upon which the validity of his title depends." The learned judge cites in support of this position, *Rex* v. *Croke,* Cowp. 26 ; *Williams* v. *Peyton,* 4 Wheat. 79 ; *Rokendorf* v. *Taylor,* 4 Pet. 349 ; *Jackson* v. *Shephard,* 7 Cowen, 88 ; *Atkins*

v. *Kinman*, 20 Wend. 241; *Thatcher* v. *Powell*, 6 Wheat. 118; *Jackson* v. *Esty*, 7 Wend. 148; *People* v. *Mayor*, 2 Hill 9. "These cases," Justice Bronson continues, "and those to which they refer, will be sufficient to justify all that has been said concerning the necessary requisites for making out a title, in the defendant." We will add the following to the list, as in point, on the same subject: *Wiley* v. *Beam*, 1 Gilm. 302; *Garrett* v. *Wiggins*, 1 Scam. 335; *Doe ex dem Hill* v. *Leonard*, 4 Scam. 140. In which cases it was expressly decided that the auditor's deed was not admissible in evidence without preliminary proof that the prerequisites of the statute had been complied with. In *Thompson* v. *Gotham*, 9 Ohio, 170, Judge Hitchcock says: "In order to sustain a title under a sale for taxes, it is not sufficient to produce the collector's deed. There must be evidence to show that the tax has been levied, that the steps required by law to authorize a sale had been taken, and that the person making the deed had authority to make it."

*Mason* v. *Roe*, 5 Blackf. 98, is a decision much in point on the first branch of this case. The defendant relied upon a title under a sale of the lot for taxes assessed for the year 1831. He failed to prove that the board doing county business had fixed the amount which should be collected on the value of town lots in that year, and the question was, whether proof of such an act of the board was essential to the defendant's title. The court say, "it was the duty of the board to determine the amount of tax to be collected on town lots for county purposes, and unless they did determe there was no legal tax on the lot to be collected, and the defendant failed to prove any legal claim to the lot." And in the case of *Williams* v. *The State*, 6 Blackf. 36, it was held that the statute of 1835, under which the proceedings were had, contained no provision, *affecting the general rule*, respecting the proof of tax titles. "That rule *is* that the claimant under such title must prove that all the requisites of the law have been complied with." The court further

Scott *v.* Babcock.

hold, "that unless the steps which the law required to be taken, as well before as after the collector's return had been regularly pursued, the circuit court had no jurisdiction under the statute to divest the plaintiff in error of his property and vest it in the State. And in the case of *Parker* v. *Smith,* 4 Blackf. 70, it was held that under a statute which made the deed *prima facie* evidence, the defendant—who was resisting the tax title—might prove that notwithstanding the collector's deed, that from the time the precept came into the collector's hands up to the time of sale, that there was sufficient personal property on the premises out of which the taxes might have been made, and that the collector's deed under said statute furnished no evidence that the tax had been legally assessed, or that it had not been duly paid, or that the land was not exempt from taxes.

See also, *Ronkendorf* v. *Taylor,* 4 Peters, 349, a case involving the validity of a tax deed. The supreme court hold the following language : "The court recognize the correctness of the principle contended for, by the counsel for the plaintiff in error, that in an *ex parte* proceeding of this kind, under a special authority, great strictness is required. To divest an individual of his property against his consent, every substantial requisite of the law must be shown to have been complied with. No presumption can be raised in behalf of a collector who sells real estate for taxes to cover any radical defect in his proceedings ; and the proof of regularity in the procedure devolves upon the person who claims under the collector's sale."

See also, *Mason* v. *Fearson,* 9 How. 284 ; *Carlisle* v. *Longworth,* 5 Ohio, 229 ; *Waldron* v. *Tuttle.* 3 N. H., 340 ; *City of Washington* v. *Pratt,* 8 Wheat. 681.

We consider it unnecessary to multiply authorities upon this subject. We should not have referred to so many as we have, were it not for the fact that for the first time in the history of our jurisprudence, we are called upon to decide on the validity of a deed made on the sale of property for

taxes. Nothing that we can add will give additional force to the highly respectable authorites to which we have referred. We will close this branch of the case by stating that the court did not err in excluding the deed offered, unaccompanied with proof of the previous proceedings of the revenue officers. This *onus* was upon the defendant, and before Babcock could become disseized of his title, it was incumbent upon the defendant to establish an exact compliance with all the essential requirements of the statute. Upon such compliance alone depended the power of the officer to sell, and proof that the statute had been strictly followed was essentially necessary to impart vitality to the defendant's deed.

The only remaining branch of the case is one which we approach with some diffidence, not because we have not entire confidence in the correctness of our decisions, but because an opinion has once been written on the question adverse to the views which a majority of the court entertain. The question embraced in our third and last proposition, involves a construction of an act entitled "an act for assessing and collecting public revenue," approved February 15, 1844.

The defendant also exhibited a deed, made, as he contended, in pursuance of a sale under this statute, which the court decided void upon its face, in consequence of it appearing that the report of the delinquent list to the court, the judgment and sale took place one year sooner than the time prescribed by the statute. The deed, the court decided to be *prima facie* evidence of the regularity of the proceedings. This decision was in favor of the plaintiff in error, and therefore if erroneous, he cannot assign error upon it, neither can the defendant object to it as the deed was declared void, and the judgment was in his favor. The legality of the decision, then, does not properly arise. We may be permitted to remark, however, that the statute in this particular is different from that of 1843. "Sales made

and deeds executed by treasurers under the statute of 1844 are to have the same force and effect, and be of the same legal validity, as sales upon executions in the district court, and deeds made by sheriffs upon such sales ; section sixty-five. And such deeds made by sheriffs are to be considered as *prima facie* evidence of the existence of a judgment and execution, authorizing said officer to sell, and also of the regularity of said sale." Laws of 1844, p. 44, § 9.

But the point under consideration arises in reference to the proper construction to be given to sections 50, 52, 53 and 54. Section 50 provides " that the treasurer shall, so soon after the first day of January in each year, as possible, make out a complete list of the lands, and property upon which the taxes remain unpaid, which list he shall file in his office."

By this section it will be observed that the treasurer is not obliged to make out the delinquent list, until after the first day of January of each year. He must do it, however, as soon as possible after that time. It may be that one month, three months, or even six months would elapse before it would be possible for him to make out the list of property on which taxes were unpaid ; and yet if this were a fact, no statute would be violated by making it out after the expiration of the last mentioned period. The legislature evidently contemplated that some time would elapse after the first day of January, before this duty would be performed. The list when made out must be filed. No time is prescribed when this is to be done, but grant that it is to be filed as soon as made out, it cannot be filed on the first day of January. It is impossible for the filing to be made on the first day of January of the year in which the list is made out. The statute is, that the treasurer so soon *after* the first day of January in each year as possible, shall make out the list, &c. The first day of January must pass before the officer is permitted to proceed to discharge this duty. If he makes out the list *on* the first day of January,

10

he does it in violation of the positive provision of the statute. He could, with the same propriety, make it out before the first day of January, as on that day. There is no ambiguity we think in this section. It is only susceptible of one construction, or rather its provisions are too plain to require any construction. The fifty-first section provides for the compensation of the treasurer. The fifty-second section is as follows : " All taxes upon any lands and property due and unpaid on the first day of January, for the previous year, and returned delinquent as aforesaid, shall draw interest at the rate of fifty per cent. for the first year they shall so remain unpaid, and one hundred per cent. for the second year."

This section fixes the rate of interest. It matters not whether this interest commences on the first day of January after the list is filed, and continues two years from that time, or whether it begins on the first day of January previous to the treasurer's making it out, and remains on file the last year without interest. It is, however, but reasonable to presume that the legislature intended that the two years mentioned for the taxes to draw interest, were the incidental two years, during which the treasurer should receive the taxes. This would give the owner the right to pay his taxes, without interest, any time after the first day of January of the year in which the treasurer is required to make out his report. In no other way can we reconcile the difference between the first and second year's interest. In no other way can we account satisfactorily for the exorbitant interest required on the last year. In all of the preceding revenue acts, fifty per cent. interest was the highest rate authorized. Time, as we have remarked, was allowed the treasurer for making out his list. For the interest which might have been claimed for this fraction of a year, the legislature provided an equivalent by requiring a high rate for the second year. Although speculative and doubtful views may be entertained of this section, when taken by

itself, its meaning is obvious when viewed in connection with the context.

The succeeding section provides that " the treasurer shall receive the taxes due upon any of the delinquent lists, upon the terms provided for in the foregoing section, and upon no other, during the space of two years from the first day of January next, after said list shall be filed in his office as aforesaid."

The delinquent list, as we have shown, could only be filed after the first day of January. The taxes are to draw interest two years; and then this section immediately follows, requiring the treasurer to receive the taxes within two years from the *first day of January*, *next* after the filing of said list. But this must be done upon terms, as provided in the antecedent section, to-wit: the payment of interest at the rates therein stipulated. In this section there is no uncertainty, neither is it inconsistent with the preceding one. It qualifies and explains it. The treasurer, in clear and unequivocal terms, is required to receive the taxes due upon the delinquent list, any time within the space of two years after the first day of January *next* after it is filed. This is the only section definitive of the time when this may be done, and in this particular must control. The positive provisions of a section of the statute, cannot be disregarded, because of some seeming incongruity with other sections of the same statute. The *positive* section must prevail, and the others yield to, and be governed by it. When the provisions of a statute cannot be understood from the language in which they are expressed, we are then at liberty to look to the intention of the legislature, " the old law, the mischief and the remedy," and to give it such construction as the circumstances under which it was pased will justify; such an one as will harmonize all its provisions, and such an one as will carry out what we believe to have been the object of the legislature in passing it. But this rule of construction cannot be adopted when the statute speaks for

itself, and the intention of the legislature is apparent upon the face of the act. The construction contended for by the plaintiff in error, if permitted to prevail, would utterly annul this fifty-third section. This is the most important section in relation to this subject, being the only one prescribing the time in which the owner is permitted to redeem his land from the delinquent tax list. It is contended by counsel that the owner has but one year to pay his taxes from the first day of January next, after the report is filed, or in other words, that the computation of time commences on the first day of January, prior to the treasurer's entering upon the duty of making out his delinquent list. This construction is not authorized by either of the other sections of the statute, as each is silent in relation to the time the owner is allowed for paying his taxes. As we have remarked, such construction abrogates the fifty-third section, the only one in point as to the time allowed. But the fifty-fourth section is referred to as justifying such construction. "When the taxes upon lands in any county in this territory have remained thus due and unpaid, for the said term of two years, it shall be the duty of the county treasurer to make report thereof to the district court." "Have remained *thus* due and unpaid," that is due and unpaid as provided in the preceding section, to-wit : for two years next after the first day of January. This is clear from the context, "for the *said* term of two years," that is the said term of two years specified in the section preceding. This section is in perfect harmony with the fifty-third. It refers to it, and the term two years mentioned in it is expressly qualified by the words " thus " and "said," which refer to the section immediately preceding.

It is not necessary to dwell longer upon this statute. Neither do we consider it necessary to introduce authorities to show that such statutes are always to be construed more strongly against the government than the citizen. Our construction does not require any such foreign aid for support.

Scott v. Babcock.

The statute is plain and easily understood, and the only wonder is that the profession should entertain conflicting views conccring it. The case of *Noble* v. *The State*, 1 G. Greene, 325, has been referred to by the counsel for plaintiff in error. Since that decision was made the bench has changed. Judge Williams now occupying the place then filled by Judge Hastings. Although I assisted in trying that case, I dissented from the decision at the time it was pronounced. Subsequent examination and reflection have confirmed the views which I then entertained.

But it is said that the court has rendered judgment against the delinquents and that this judgment cures all defects in the preliminary proceedings. This question was not raised in the case of *Noble* v. *State* but it has been so frequently decided by this court, that an extended examination is not at all necessary. The deed offered in evidence by the plaintiff in error, and on which he relied, showed on its face that the court had no authority to render the judgment which it did render. It showed that the report of the court by the treasurer was made one year too soon; the judgment, consequently, upon it was rendered without the court having rightfully acquired jurisdiction either over the parties or the subject matter. *Williams* v. *The State*, 6 Blackf. 36. Jurisdiction will always be presumed when the court rendering judgment is one of general jurisdiction; and that the court had jurisdiction need not appear upon the face of the proceedings. But if it appears by the judgment relied upon or the proceedings sought to be enforced under it, that there was no jurisdiction in the court to render the judgment, such judgment and proceeding are void, and cannot be enforced, nor can any rights accrue under them. The droctrine is plainly laid down, and this distinction clearly made in the opinions delivered in the case of *Wright* v. *Marsh, Lee* and *Delevan:* 2 G. Greene, 94 ; and *Reid* v. *Wright*, ib. 15. See also a recent opinion of the supreme court of the United States in *Webster* v. *Reid.*

The judgment is absolutely void upon its face, for want of power in the court to render judgment at the time it was rendered, and was therefore liable to be impeached collaterally whenever attempted to be enforced. Suppose the judgment had been rendered in an action of assumpsit, and it had appeared that the defendant had not been served with process. In such case the supreme court of the United States, in *Webster* v. *Reid* say, " that when a judgment is brought collaterally before the court as evidence it may be shown to be void upon its face, by want of notice to the person against whom the judgment was entered, or for fraud." Or suppose from such a judgment it should appear that the defendant had only one day's notice, when the statute required ten, and there should be no appearance ; who does not know that that would not be notice, and that the court would not acquire jurisdiction over the person? Or again suppose that the statute required one term to intervene after the issuing of the summons before judgment could be rendered, and it should appear from the judgment that it was rendered without such term intervening, would not such judgment be void and liable to be collaterally assailed when introduced for the purpose of establishing rights under it? How much stronger is the case before us when it appears that the treasurer had no power to make report to the court when he did make it, and the court had no power under the statute to render the judgment until after the expiration of one year from the time when it was rendered. This question of jurisdiction has been before us so frequently, and has been so ably presented, and so fully decided, that it would be but a work of repetition to pursue it further. The deed was void upon its face as ruled by the court below.

The facts that the various questions growing out of tax sales are presented to us for the first time, must be our apology for this extended opinion. We have endeavored to meet all these questions fully and fairly, and to settle

Scott *v.* Babcock.

them in such a manner that the views which we entertain of the law applicable to tax sales cannot be misunderstood.

Judgment affirmed.

*Dissenting opinion by* GREENE, J. I cheerfully accord to the opinion, much ability and many correct legal propositions. But at the same time, I claim that the zeal of my brothers against tax titles, has taken them too far.

1. I assume that the first two questions for adjudication as proposed in the opinion, are not sustained by the record in the case. Had the assessment book been offered unaccompanied by other evidence, it might have been very properly rejected or pronounced insufficient to establish a tax title. But the facts in the case show, that the assessment book was offered with the proposition to follow it up with the other necessary proofs of title. The opinion admits that "the defendant proposed to follow this up with the after acts of revenue officers of the county so as to make out a tax title to the lot." Under such a proposition, how could the court with propriety reject the assessment roll? This was the first link in the chain of defendant's evidence, the very foundation upon which the superstructure of his title rested.

The assessment of the property was the first step that could be legally taken to bring the property under the revenue laws, and the assessment roll was the legitimate proof of the assessment. What item of evidence then, could, more appropriately come first in order, or what seperate item, could be more conclusive to sustain a link in defendant's title?

The opinion claims the appointment of appraisers, to be " as indispensable a prerequisite as the assessment itself." The appraisement was no doubt essential, under the law, but obviously the assessment was previously required ; it was altogether prerequisite to the appointment and action of the appraisers. As the assessment was the precedent act, to

which all others referred, and to which they were subsequent, it follows as a necessary corollary, that evidence of the assessment came first in the order of proof, as the foundation upon which all the rest was supported. That the assessment roll was admissible to show the validity of the assessment, appears to my mind a self-evident proposition, against which no authority or reason can be adduced ; especially under defendant's accompanying offer " to follow this up with the after acts," to make out his tax title. Would not those " after acts " comprise the "indispensable appraisement?" Clearly so.

As the assessment was both anterior to and independent of the equalizing appraisement it follows that the proof of the one, would be entirely different and apart from the other, and therefore it was not necessary that the evidence of the two distinct facts should be blended, and amalgamated before the court and jury. Would it not harmonize quite as well with a systematic practice and rules of evidence, to admit the proof of each act, in its appropriate order? Had the defendant rested his case, without proof of any one essential item in his title, if he neglected to show that the requirements of the revenue law had been substantially complied with before the tax deed was issued,— under a law which did not render the deed *prima facie* evidence of title,—then, his muniments of title might with some show of propriety have been rejected. But, as it is, the action of the court appears to my mind altogether premature and unauthorized.

2. The rejection of the tax deed, connected with the delinquent tax of 1843, because unaccompanied by proof of the preliminary steps, would have been well enough, if the defendant had not proposed to follow it up with the other necessary evidence. In rejecting the assessment roll the court kept out the other necessary proof. It seemed to be the settled determination of the court below, to admit no evidence whatever, that was offered for the purpose of estab-

Scott *v.* Babcock.

lishing the "odious tax title." As the most essential links, the *alpha* and *omega* in defendant's title were rejected, he might well despair of offering minor and intermediate points. I am at a loss to know, how it would be possible, under such ruling to get any evidence of a tax title before a court. To justify this rejection of the deed, the opinion very correctly informs us that " such a deed depends for its vitality upon the legality of the proceedings of certain ministerial officers," &c. But should a court take it for granted that such proceedings are illegal by refusing to entertain them, sufficiently to test their legality? It is decided that the defendant should " establish by testimony, that all of those acts which were necessary to authorize a sale and to convey title had been performed," and still, the testimony which was offered to establish some of the most material of those acts, was rejected. How. could those acts be established by testimony, when the court refused to entertain the only evidence by which the acts could be proved?

I am firmly of the opinion, that the defendant should have been permitted to proceed as he proposed, step by step, with his testimony, in order to show that every thing had been done which the statute makes essential to the execution of the deed. In this way only, could the court determine whether every substantial requisite of the law had been complied with.

If the defendant had proposed to rest his title upon the assessment roll, or upon the deed alone, if he had not distinctly announced his purpose to follow up with other testimony, "so as to make out a tax title to the lot," the ruling of the court, could with more propriety be affirmed.

It often happens that courts evince an unyielding bias against tax titles; so strong indeed as often to prevent the manifest intentions of the revenue laws. Such extremes, —though honestly executed—often result in great injustice and cast an unfortunate stigma upon the revenue laws of the land, by rendering them inoperative.

J

True, in an *ex parte* proceeding of any kind against property, more than ordinary strictness should be observed. Before deciding that a man is divested of his title to land by tax proceedings, a court should be well satisfied that every substantial requirement of the law has been observed, and that there is no radical defect in the proceeding. But this strictness should not be carried to such extremes as to prevent the very first principles of the common law, which impart so much vitality, uniformity and harmony to our system of jurisprudence. If tax titles are so repulsive, let the appeal be made to the law makers ; but let those fundamental rules in the law of evidence, and those first principles in the doctrine of presumptions, remain as established by the wisdom and experience of ages. In the opinion before us, such strict performance in every particular, whether essential or non-essential, is enjoined, and such a sweeping system of rejecting tax sustaining evidence is recognized, that it would be utterly impossible in any case to sustain tax deeds. Still the legislature intended that they should be sustained and that such " conveyance shall vest in the person to whom it is given, an absolute estate in fee simple."

It is the true province of a court to avoid either extreme, to see that the intentions of the law, are substantially subserved, and that the delinquent tax payer be required to conform to the revenue regulations of the state. It too often happens that an over generous concern for the delinquent tax payer causes the equally important interest of the public to be overlooked.

No revenue law can preserve vitality and force under the prevailing opinion that a tax title cannot be rendered valid. While it remains a law, let it be manfully, fearlessly enforced ; if odious and oppressive, let it be repealed. In this way only, can our tribunals of justice retain that majesty of law and order, so essential to our free institutions.

3. The majority of the court have seen fit in this case

Scott *v.* Babcock.

to overrule the decision in *Noble* v. *The State*, 1 G. Greene, 325. I regret especially that so little weight should be attached to a former decision of this court. At the time of that decison, I did not understand Judge Kinney as dissenting. Had I known it, I certainly should have placed him right in the report of the case. Until the case at bar came up I have always regarded *Noble* v. *The State*, as decided by a unanimous opinion. It is at least the opinion of a majority of the court, and therefore a decision of the supreme court, entitled to some consideration, and should only be overruled, for strong and obvious reasons, upon principles of general application.

The overruled point involves only a question of construction; and it must be conceded, I think, that strong arguments can be given in favor of the construction in *Noble* v. *The State;* much stronger than those advanced in favor of the present construction. Although the reasons are but briefly expressed in the overruled opinion, I do not consider it necessary to repeat them here.

But admit the full force of the construction given in this case to section fifty-three; admit that the treasurer was authorized to receive the taxes on the delinquent list of 1844, up to the first of January, 1848, does it necessarily follow that the provisions of section fifty-four could not be enforced in accordance with the very letter of that section? It provides " that when the taxes upon lands in any county have remained thus due and unpaid for the said term of two years, it shall be the duty of the county treasurer to make report thereof to the district court," &c. In this case the taxes had been due and unpaid over two years before the report was made to the court, and subsequent to that time the sale took place, and the deed was executed over two years and a half after the taxes became delinquent, or "*thus* due and unpaid for the said term of two years" as stated and limited by sections fifty-two and fifty-four, Now, take these two sections together with the obvious reference which

Scott *v.* Babcock.

§ 54 makes to § 52, and it necessarily follows, that the treasurer was justified in making his report preparatory for judgment and sale at the first term of court after the taxes had been two years delinquent. It follows too, that the sale and deed in this case were not prematurely made. But according to the construction given in this case to § 53, the effect of them might have been avoided if the delinquent tax had been paid at any time before January 1, 1848. If paid within the time extended by the opinion, the fact could have been shown to the court, and the deed rejected. But it is not pretended that the tax was paid, within the period of the most extended construction, and consequently the deed should have been entertained as *prima facie* evidence of defendant's title.

Under the overruling construction, the act is rendered nugatory for one year after the delinquency. The tax payer is encouraged to a third years delay, without paying any interest or penalty. Can this be regarded as the spirit and policy of the law? In nearly every section of the act, with the single exception of section fifty-three, the legislative intention that the taxes should remain delinquent only two years, is to my mind obviously expressed, and as this was the construction of the supreme court at the time the court below rejected the deed, it follows that the court was in error under the authorities then in force. It is to be regretted that the opinion in this case is calculated to encourage a disregard of supreme court decisions. If this court depart so readily from their own decision, upon mere points of doubtful construction, how can it be expected that their decisions will command more respect from other courts.

Certainty and uniformity are of paramount importance, in judicial decisions ; especially so in cases affecting the title to real estate.

For over two years, *Noble* v. *The State*, has been the settled law, upon which our citizens reposed with confidence, in their real estate transactions, but now, without regard to

that authority, or the rights which have been vested under it, and upon an unimportant question that has no bearing upon any other statute, or proceeding at law, we have that authority reversed and all rights acquired under it treated as nullities. Another change in the bench may result in another change in the construction of this statute. Well may men cry out against the uncertainties of the law!

But for this departure upon so slight a ground from former adjudication, I could perhaps have yielded my other objections in silence to the greater wisdom and experience of my seniors.

*Wright* and *Knapp*, for plaintiff in error.

