Johnson, Justice,
 

 delivered the opinion of the court. — A number of lots in the city of Washington, the property of the respondents, having been sold for payment of taxes, assessed under authority of the appellants, to the use of the city, this bill was filed by the respondents, in the circuit court of the district, to enjoin the corporation from executing conveyances to the purchasers. The allegations on which the claim for relief was asserted, presented to the view of the court below a variety of irregularities, previous to, or accompanying the sale, which that court decided to be deviations from the provisions of the law of congress, authorizing the sale. A perpetual injunction was, therefoi’e, decreed, and from that decree, the defendants below have appealed.
 

 There have been various questions submitted to the consideration of this court, in the argument, which, with a view to precision, shall be stated in the parties’ own language, in their order.
 

 *1 Tbe first is, whether sales of unimproved squares or lots, in the city of Washington, to pay two years’ taxes thereon, pursuant to the 8th section of the act of congress, passed in the year 1812, entitled, “an .act, further to amend the act for the incorporation of the city,” would be illegal, merely because such squares and lots had not been assessed to the true and lawful proprietors thereof, without any wilful mistake or neglect,
 
 *301
 
 on the part of the persons who made the assessment, the assessors having used due diligence to ascertain the true proprietors ? This question, as well as every other in the cause, must find a solution in the provisions of the law which vests the power to sell. "Where these are explicit and consistent, there is no ground for adjudication but their literal meaning. That they must be construed strictly, follows, from their affecting private rights, and particularly rights of freehold ; and that they must be pursued strictly, is the consequence of their being the sole foundation of the powers executed under them.
 

 The Tth section of the act of incorporation of 1802, vests in the corporation a very general power to lay and collect taxes ; but the next section of the same act limits their power in enforcing payment of taxes, to a distress and sale of goods, and contains an express prohibition against subjecting vacant lots to a sale for taxes. As no goods could be expected to be found on such lots, it became necessary to pass this act of 1812, the 8th section of which is in these words : “That unimproved lots in the city of Washington, on *which two years’ taxes remain due and unpaid, or so much thereof as may be necessary to pay such taxes, may be sold, at public sale for such taxes due thereon : provided, that public notice be given of the time and place of sale, by advertising, in some paper printed in the city of Washington, at least six months, where the property belongs to persons residing out of the United States ; three months, where the property belongs to persons residing within the United States, and without the limits of the district of Columbia ; and six weeks, where the property belongs to persons residing within the district of Columbia, or city of Washington : in which notice shall be stated, the number of the lot or lots, the number of the square or squares, the name of the person or persons to whom the same may have been assessed, and also the amount of taxes due thereon.” And then, follows another proviso, securing to the proprietor, the right to redeem within two years after such sale. In legislating upon this subject, the corporation has sanctioned an assessment to the owners or supposed owners ; and the real state of the question is, whether this is not going beyond the power of sale, as delegated to them by the act of congress. This again depends upon the question, whether the person “ to whom,” in the language of the clause cited, “ the lots may have been assessed,” can mean any other than the actual owner of such lot.
 

 We think, it cannot. It was, undoubtedly, in the power of congress to have left what latitude they *pleased to the assessor, in designating the owner ; but if they have confined him to the necessity of determining the true owner, it is not in our power to enlarge his discretion. It may be a hardship upon the corporation, but the legislature only can decide, whether that hardship shall be perpetuated or not. It must be observed, that the alternative is one which would put it in the power of the assessor to designate a mere nominal owner, a kind of casual ejector, in every case. Had congress intended to lighten the labors of the corporation or their assessor, in this respect, there were very simple means of doing it; they might have sanctioned a designation with reference to the first or last vendee of record. But it is obvious, that congress were very jealous of the exercise of this power over the lots of absentees ; and in the previous provisions of this eighth section, they make the right of selling, with reference to the time
 
 *302
 
 of advertising, to depend expressly upon ownership ; not reputed ownership or assessment :
 
 “
 
 to whom the property belongs,” are the words of the law. When, therefore, they afterwards speak of publishing the name of the person to whom the lot was assessed, they must be held to mean, the name of him who was the owner, at the time of the assessment. This removes many of the inconveniences apprehended from subsequent or fraudulent transfers ; and the inquiries remaining to be made by the assessor, will be greatly simplified, by the operation of the registering laws of the district. It will seldom happen, that the legal estate does not, in fact, exist in the last vendee of ^record, or his heirs or devisees. The name of the real party in interest must have been, in the eyes of congress, the most awakening circumstance of the advertisement required to warn him of his danger.
 

 2. The second question is, whether, where several lots belonged, and were assessed to one person, and two years’ taxes were due on every one of them, it would be lawful to sell one of the lots, to pay the taxes due upon all, or each lot would be liable only to be sold to pay the tax due on itself ? This question, thus stated, does not admit of a general answer.
 

 That each lot stands incumbered with no more than its own taxes, and the lien upon each is several and distinct, results, not less from the provisions of this eighth section, which gives the right of redeeming, severally, than from the consideration that, in case of a partial sale by the proprietor of many lots, the purchaser from him would not, by the act of transfer, hold his purchase disincumbered of its own particular taxes, either absolutely, or upon the contingency of the remaining lots of his vendor being adequate to the satisfaction of the taxes due on the whole. Nor would a purchaser of a single lot hold his purchase incumbered with the taxes due on the whole mass of lots held by the vendor : each would have the right to redeem, upon paying the taxes assessed on his own particular purchase, and would hold his purchase subject to such taxes.
 

 The provisions of the act are clearly intended *to raise the tax of each lot from itself. The words are, so
 
 much
 
 thereof, not so
 
 many ;
 
 as they must have been, after speaking of “ unimproved lots,” had it been intended to authorize the sale of some, for the taxes of others ; and not the sale of each one, or “ so much ” as is necessary of each one, for the payment of its own taxes. Apply the enacting words to the case of an owner of a single lot, and the effect of the word “ much,” can only be to authorize a sale of part of a lot, whenever circumstances will admit of such a sale, and the sum due will not require more. But if taxes be due by one and the same individual, in small sums, upon many lots, and one lot being set up for sale, produces a sum adequate to the payment of all, the whole arrears become paid off, and no excuse can then exist for making further sales. This exposition disposes of the second question.
 

 3. The third question is, whether it be necessary that the advertisement should contain a particular statement of the amount of taxes due on each lot separately ; or, where several lots belonged to the same person, whether it would be sufficient to state in the advertisement, the aggregate amount of taxes due on all the lots so belonging to the same person ? This may be a very immaterial question practically, and it.may not be very easy to assign a sufficient reason of policy for the one or other alternative. But what have we to do with such inquiries, in cases of positive enactment ? The law must
 
 *303
 
 be pursued, whatever be the previous *steps required. The difficulty here presented, is grounded on the use of the words in this eighth section, “ amount of taxes.” This, in its ordinary import, expresses an aggregate of taxes. But it is obvious, that we cannot here apply that aggregate idea to a sum made up from the taxes of many lots; since this would also support the sufficiency of a publication, exhibiting nothing more than the amount of taxes upon the whole list of lots advertised, whoever be the proprietors. Some more appropriate signification must, therefore, be sought for it; and this is easily found ; for, when it is considered, that the taxes of each lot are made several liens upon each, it follows, that this aggregate idea can have reference only to the amount made up fx-om the arrears of the two years, which must be due to authorize a sale. We, therefore, think, that the taxes of each lot ought to be severally exhibited. The operation of such a provision must be the test of its own policy. The duty is easily complied with, and the performance of it may not be destitute of practical utility.
 

 4. The fourth point has not been pi-essed by the appellants’ counsel, nor can there be a doubt entertained, that it is altogether against the appellants. The publication of the sum due, was as necessary under the eighth section, as any other act required by it; the circumstance of time in the avdertisement, therefore, could not have been dispensed with as to that particular. An increase of the sum demanded, necessarily required the extension of the time of advertising.
 
 Non constat,
 
 *but that the smaller sum may have been provided and ready on the day of sale ; or that the lai’ger would not have been provided, within the legal time, had the advertisement been continued.
 

 5. The fifth question is, whether, if unimproved lots, on which two years’ taxes be due, be advertised for sale, and the amount stated be greater than that actually due, the sale of such lots will be void ; and, if void, whether for the whole, or only for the amount of excess, when the amount is divisible, as it may be in the sale of sevei’al lots ? This question may be disposed of thus : As it supposes that two years’ taxes are actually due, there can be no doubt, that the lots may be severally sold ; for the greater sum includes the less, and the owner had his remedy to prevent a sale, by tendering the amount actually due on any particular lot set up for sale. But if the corpoi-ation are suffered to go on to sell, and the sale of any one or more lots shall produce the amount actually due on the whole, by the same individual, it is clearly at their peril to proceed further. They must, in law, be held cognisant of the amount justly demandable, and have no power to sell, but for taxes actually due.
 

 The sixth question we undei-stand to be withdrawn ; and the seventh, at least, in one view of it, we consider as disposed of in the answers to the first and fifth. If two years’ taxes be actually due by the pai-ty whose property is advertised, and it be not tendered, the sale must be valid, *and the owner must be left to this remedy against the corporation for adjust- ■ ing the correct amount. But if it be intended to obtain the decision of this court, whether one man’s lots can be legally sold for another man’s debts, we cannot pei’ceive that it will admit of a question ; nor can it ever occur, if the course be pursued which is marked out by this decision. The tenth point made in the cause, is one which goes to contest the correctness of the ■
 
 *304
 
 decision below, on a general principle of equity; but, understanding this question, as well as that which arises upon the ground of the complainant’s supposed remedy at law, to be withdrawn, we shall decline noticing them.
 

 Decree affirmed, with costs.