## In re HICKS.

(District Court, N. D. New York. January 5, 1905.)

1. BANKRUPTCY—STATUTES—MUNICIPAL ORDINANCES AND REGULATIONS.

Under the federal Constitution, providing that Congress shall have power to enact uniform bankruptcy laws, Bankr. Act July 1, 1898, c. 541, 30 Stat. 544 [U. S. Comp. St. 1901, p. 3418], authorizing the discharge of certain persons from specified debts on complying with the provisions of the act, superseded the ordinances and fire regulations of a city, requiring members of the city's fire department to promptly pay all necessary personal and household expenses, and making his failure to do so a ground for discharge in so far as it affected debts of a fireman dischargeable in a bankruptcy proceeding pending against him.

2. SAME—PROCEEDINGS BEFORE MUNICIPAL TRIBUNALS—STAY—JURISDICTION.

Under Bankr. Act July 1, 1898, c. 541, § 2, 30 Stat. 545 [U. S. Comp. St. 1901, p. 3420], as amended by Act Cong. Feb. 5, 1903, c. 487, 32 Stat. 797 [U. S. Comp. St. Supp. 1903, p. 410], vesting bankruptcy courts with such jurisdiction at law and in equity as will enable them to exercise original jurisdiction in bankruptcy proceedings, etc., and to make such orders, issue such process, and enter such judgments as may be necessary for the enforcement of the act, a court of bankruptcy has jurisdiction to enjoin the prosecution of a bankrupt fireman for neglect of duty, looking to his discharge from the department, because of his nonpayment of a debt dischargeable in a pending bankruptcy proceeding against him.

3. SAME—ADEQUATE REMEDY AT LAW.

Where, pending bankruptcy proceedings against a member of a city fire department, proceedings were instituted to remove him on charges, for neglect of duty, in failing to pay a debt dischargeable in bankruptcy, he had not an adequate remedy at law, in view of a provision of the city's charter declaring that in case of such removal the decision of the commissioner shall be final, and not subject to review by any court.

4. SAME—INJUNCTION.

Shortly after reinstatement of a member of a city fire department, he was adjudged a voluntary bankrupt, and almost immediately thereafter charges were filed against him for failure to pay a bill of a creditor, as required by the ordinances and fire regulations of the city, for the purpose of removing him from the department. *Held*, that such debt being provable in the bankruptcy proceedings, and there being no evidence that the nonpayment thereof in any way affected or impaired the discipline of the fire department, the proceedings for the bankrupt's removal would be enjoined until the expiration of 12 months from the date of the adjudication, or until the question of the bankrupt's discharge, sooner applied for, should be determined.

In Equity.

Application for an injunction enjoining and restraining Patrick Caulfield and James Caulfield, creditors of said bankrupt, and John P. Quigley, chief of the fire department of the city of Syracuse, N. Y., and also such others as may be aiding and abetting, from further prosecuting against said bankrupt, Allen M. Hicks, who is a member of the fire department of the city of Syracuse, N. Y., the charge "that the said Allen M. Hicks has been guilty of neglect of duty." The specification under such charge is "that said Allen M. Hicks has thus far failed to pay a bill of $37.10 held by P. Caulfield & Son. When restored to duty on May 18th, he agreed to pay this as well as other bills, and up to the present time he has failed to do so."

Ray B. Smith, for the bankrupt.

W. W. Magee (Corp. Counsel), for John P. Quigley.

RAY, District Judge. The bankrupt, Allen M. Hicks, is a member of the fire department of the city of Syracuse, N. Y., and has been for a long time. At some time and for some reason not appearing, charges were preferred against said Hicks, and he was suspended from duty, and, it would seem, removed from his position as fireman. However this may be, his suspension and removal were declared illegal by the Supreme Court of the state of New York, and Hicks was restored to duty, not long before the institution of this proceeding. His pay as fireman is $75 per month, and his illegal suspension from duty, of course, crippled him to some extent financially. He is a married man and a housekeeper. A long time before filing his petition in bankruptcy he had mortgaged his household furniture and belongings for as much or more than they are worth. The inventory and schedules filed by Hicks in this proceeding showed that he owes somewhere from six to eight hundred dollars. There is no charge or evidence of immorality on the part of Hicks, or that he has ever failed in any respect to faithfully perform his duties as fireman, and obey all orders and directions of his superiors, except in the one particular that he has not paid a debt owing by him to P. Caulfield & Son, and which debt amounts to about $37. After Hicks was restored to duty, as above stated, it is alleged, and is probably true, that he promised to pay his indebtedness as rapidly as he could, and there is no evidence that he has not done so; but it is conceded that he is owing various debts, of the total amount above stated, which he has not paid.

On or about the 26th day of November, 1904, said Allen M. Hicks filed his petition and schedules in due form in voluntary bankruptcy in this court. On the 28th day of November he was duly adjudicated a bankrupt, and the time and place for the first meeting of his creditors were fixed. Shortly after Hicks was restored to duty, P. Caulfield & Son filed their bill, amounting to the sum of $37.10, with the commissioner of public safety of the city of Syracuse; and thereupon the commissioner of public safety, in substance and effect, directed John P. Quigley, the chief of the fire department of said city, to take proceedings against said Hicks for the nonpayment of such indebtedness. It appears to the satisfaction of the court, and is evident, that this proceeding against Hicks now pending for his removal, and to which attention will be called more particularly, was the result of a determination on the part of the commissioner of public safety and of the chief of the fire department to get rid of Hicks, rather than a desire to promote, maintain, or defend the discipline of the fire department. The affidavit of said John P. Quigley is full of contradictions and inconsistencies, when carefully read and considered. Among other things, he testifies that he (Quigley) is the sole party bringing the charges, and that P. Caulfield & Son, nor either of them, had any knowledge that he was to bring such charges, and that said P. Caulfield & Son in no way advised, procured, or influenced him to make the charges against Hicks. Further on he says that Allen M. Hicks was reinstated in the fire department of the city of Syracuse on the 19th day of May, 1904; that shortly thereafter he was in-

formed by the commissioner of public safety (a Mr. Bowen) that Hicks was indebted to various merchants in the city of Syracuse for necessary personal and household expenses incurred during his term of office as fireman. He says that the commissioner of public safety instructed him (Quigley) to see to it that Hicks pay up those debts, but he was instructed to give him a reasonable time after his reinstatement to do so. He then testifies that on the 29th of June, 1904, the firm of P. Caulfield & Son filed in the fire department a bill for groceries and provisions sold to said Hicks, amounting to $37.10, and that on the same day the said bill was filed he (deponent) received a letter from the commissioner of public safety inclosing the statement filed by P. Caulfield & Son, and directing him to see to it that Hicks gave it his attention. Shortly after July 1st Quigley was informed by the commissioner that Hicks, through his counsel, had filed a statement of his indebtedness. It is self-evident that, with the indebtedness stated existing against Hicks, he, a married man, residing in the city of Syracuse, was unable to support himself and wife and pay off this indebtedness, or even any considerable part of it, prior to the time this proceeding to remove Hicks was instituted. The witness further solemnly testifies—true, upon information and belief—that the said Hicks has adequate remedies at law in the courts of the state of New York in case he is improperly or illegally removed from office, and that the District Court of the United States has no jurisdiction in this matter. There is also an affidavit made by the Caulfields to the effect that Hicks is indebted to them in the sum stated, and that neither of them had any knowledge, prior to the time that Hicks was suspended by the commissioner of public safety of the city of Syracuse from his position in the fire department on the charges preferred by Quigley for the nonpayment of their bill, that he was to be suspended; and both testify that they have not in any way advised, procured, or influenced, or attempted or intended to advise, procure, or influence, said Quigley to prefer charges against said bankrupt for failing to pay their bill. They did file their bill with the commissioner of public safety, and they must have known when they filed that bill that it would probably set the commissioner of public safety and the chief of the fire department in motion, under the ordinances of the city, to which attention will be directed, for the removal of Hicks; and this court is of the opinion and believes that they filed the bill for the express purpose of having charges preferred and proceedings instituted to remove Hicks for the nonpayment of said bill, hoping thereby to secure their pay; and this court believes, from the affidavits, that the commissioner of public safety was quick to seize upon the filing of the bill, even if he did not procure it to be filed, as an excuse for setting the chief of the fire department in motion to prefer charges, hoping thereby to secure the removal of Hicks, as they had failed in their prior proceeding for that purpose. There is not a particle of evidence that the nonpayment of this indebtedness in any way affected or impaired the discipline of the fire department of the city of Syracuse. It may be and may not be

well to have such a provision, as will be recited, among the ordinances of the city; but it would be harsh, unjust, and even barbarous, to remove from the fire department of said city a member thereof, otherwise irreproachable, who should be owing debts he could not pay by reason of sickness or some calamity beyond his power to avert.

The charge preferred against Hicks by Quigley reads as follows:

"City of Syracuse, Department of Public Safety.

"Syracuse, N. Y., December 7, 1904.

"To Ralph S. Bowen, Commissioner of Public Safety, Syracuse, N. Y.— Sir: I hereby prefer charges and specifications against Allen M. Hicks as follows:

"Charge No. 1. That the said Allen M. Hicks has been guilty of neglect of duty.

Specification. For the violation of Rule 8 of Article 18 of the rules and regulations of the Fire Department. That said Allen M. Hicks has thus far failed to pay a bill of $37.10 held by P. Caulfield and Son. When restored to duty on May 18 he agreed to pay this as well as other bills, and up to the present time he has failed to do so.

"All of which is respectfully submitted.

"Dated the 7th day of December, 1904.

"John P. Quigley,
"Chief Fire Department."

On the same day said R. S. Bowen, commissioner of public safety, prepared a notice to Hicks of said charge, and caused same to be served on him. It will be noted that the filing of charges by Quigley rapidly followed the filing by Hicks of his petition in bankruptcy.

In his schedules of indebtedness, filed with the clerk of this court on or about the 26th day of November, 1904, said Hicks included and specified honestly his indebtedness to P. Caulfield & Son, as well as all his other indebtedness. There is no pretense or claim that he owns any real estate, or that he has concealed any property. He lives, and for years has lived, in a rented house. The conclusion is irresistible that this charge was preferred and is being pressed for the reason that Hicks is taking the benefits of the national bankruptcy law, and for the purpose of either forcing Hicks to pay in full, or lose his position in the fire department of the city of Syracuse.

Syracuse is a city of the second class, and sections 201, 203, and 204 of charter of cities of second class provide as follows:

"Sec. 201. Fire Department. The commissioner of public safety shall have charge of and supervision over the fire department.

"Sec. 203. Appointment of Officers and Members. The commissioner shall appoint, when a vacancy shall occur, a chief of the fire department, who shall hold office during good behavior, or until he becomes permanently incapacitated or unfit to discharge his duties, and such other subordinates, to hold office during his pleasure, as may be prescribed by the board of estimate and apportionment, and all the officers and members of the department as vacancies may occur or the ordinances of the common council require or determine; and all the officers and members of the department shall, except as hereinbefore specified, and subject to the power of removal hereinafter specified, hold their respective places during good behavior and so long as they are competent to discharge the duties thereof, subject to the power of the common council to abolish any office or to diminish the

number of members. It shall be the duty of the chief, subject to the direction and control of the commissioner, to perform such services as may be delegated or directed by the commissioner.

"Sec. 204. Removals upon Charges. Any officer or member of the department may be removed by the commissioner upon charges affecting his conduct or character or his competency or capacity to discharge his duties, after a hearing upon such charges or an opportunity to be heard after notice thereof. The trial upon such charges shall be publicly conducted, according to rules and regulations adopted and promulgated by the commissioner; and for the purpose of such trials, the commissioner may issue subpœnas for witnesses and compel their attendance. In case an officer or member is found guilty upon charges affecting his conduct or character, instead of removing him, the commissioner may, in his discretion, suspend him from pay in the department for some definite time, or impose upon him a fine not exceeding fifty dollars. The decision of the commissioner shall be final and conclusive and not subject to review by any court."

The city of Syracuse has adopted ordinances, among which we find the following, viz.: Section 1, c. 35, of the ordinances of the city of Syracuse, provides as follows:

"It shall be the duty of all officers and employés of the city to pay all debts for necessary personal and household expenses incurred during his or her term of office, and any neglect so to do, shall be sufficient cause for his or her removal from employment or office."

Rule 8 of article 18 of the rules and regulations of the fire department provides as follows:

"(8) No member shall incur or contract any debts or liabilities which he is unable or unwilling to pay, or neglect or refuse to honorably discharge and promptly pay all indebtedness, claims and judgments and satisfy all executions that may be held or issued against him. The filing of a bill against any member of the bureau will subject such member to suspension and dismissal."

Rule 4 of article 2 of such rules and regulations provides as follows:

"(4) He shall see that all rules, ordinances, orders and directions for the government of the bureau are promptly and implicitly obeyed, and shall investigate all violations thereof and report the same to the commissioner."

It will be noted that, under the charter of the city, Hicks may be removed by the commissioner upon charges affecting his conduct or character, or his competency or capacity to discharge his duties, and he must be found guilty upon charges affecting his conduct or character, or his competency or capacity to discharge his duties. Inasmuch as Hicks was restored to duty by the courts of the state of New York after full investigation, this court will assume that there was no cause for his removal or suspension from duty up to the time he was restored to duty pursuant to the decrees of that court in May, 1904. It is self-evident that since that time Hicks has been guilty of no offense except inability to pay indebtedness in full, heaped upon him by what has been declared to be the unwarranted and unauthorized action of the commissioner of public safety and the chief of the fire department in the city of Syracuse. So far as appears or is intimated, his character is good, and his conduct has been irreproachable, except in that he has not paid the debt in question; and there is no suggestion or intimation that

he is not competent to discharge his duties as fireman or that he has become incapacitated in any respect. In short, there is nothing to show that Hicks has been or is unwilling to pay his debts in full. There is no evidence that Hicks has sought to evade payment, or is seeking to evade payment, in any improper, questionable, or unlawful way. All he has done and all he is doing is to take advantage of the national bankruptcy law, which, in substance, declares that if, being unable to pay his debts in full, he surrenders all his property not exempt to and for the benefit of his creditors, he may be discharged from all his indebtedness, with certain exceptions. Hicks owes no debt not dischargeable in bankruptcy.

It is written in the Constitution of the United States that the Congress shall have power to enact uniform laws on the subject of bankruptcy. This is the paramount law of the land, and, Congress having exercised its legislative powers by enacting a general bankruptcy law, it is the duty of every citizen of every state, of every officer of every state, and of every officer of each city, county and town, to recognize, observe, respect, and bow to the provisions of that law. Congress has provided what debts are dischargeable in bankruptcy, and what are not. If the bankrupt surrenders his property, and complies with all the conditions of the act, and brings himself within its provisions, he is entitled to his discharge; and no state court or state law or municipal ordinance, under any guise or pretense whatever, can deprive the bankrupt of the benefits the national law says shall accrue to him; nor can any state, state court, municipal body, or municipal ordinance inflict any penalty or punishment, directly or indirectly, upon the bankrupt, for failing to pay the debts in full, from which the national law says he shall be discharged. Neither can any state, state or municipal law or ordinance, say that to take advantage of the national bankruptcy law is an act affecting either the character or the conduct or capacity of a citizen, so far as they relate to his right and capacity to continue in or hold a public office or position created either by the general government or by a state. To permit this would be to allow a state to punish one of its citizens for taking advantage of the benefits of a national law, the justice and beneficence of which no state or state or municipal law is permitted to question. Hicks has done and is doing, in taking advantage of the national bankruptcy law, what the paramount law of the land says he may do—nothing more and nothing less. He has surrendered all his property to the national bankruptcy court, to be applied by it pursuant to law to the payment of all his creditors. The laws of the state of New York, the municipal ordinances of the city of Syracuse, and the rules and regulations of the fire department of that city in respect to his indebtedness can demand of him no more than this.

It is said that the United States court in bankruptcy has no jurisdiction to restrain the officers of the city of Syracuse from taking such action as they see fit to take against Hicks because of his nonpayment of this or other bills. Whether this be regarded as a

proceeding to collect or compel payment of the bill owing by Hicks to P. Caulfield & Son, or a proceeding to punish him for not paying it, or a proceeding to punish him for taking advantage of the provisions of the national bankruptcy act, or a proceeding to punish or discipline Hicks for a violation of the ordinance of the city of Syracuse, in that he has failed to pay such debt owing by him, and is seeking to be discharged from its payment without full payment, the fact stands out plainly that an attempt is being made to remove Hicks from his office or position in the fire department of the city of Syracuse, under the provisions of the ordinance in question, because he seeks to avail himself of the provisions of the national bankruptcy act; because he is doing what he lawfully may do—doing an act that in no way pertains to the proper discharge of his duties as a fireman, and which cannot legally be said to affect his character or standing as a citizen or as a fireman, for the reason the act is one the paramount law of the land says he may do, and one the city of Syracuse cannot say he shall not do, or suffer for in any way if he does it. This being true, the proceeding against Hicks, in any view, becomes the infliction of a penalty or of a punishment, or the attempt to inflict a penalty or punishment, for the nonpayment of a debt dischargeable in bankruptcy. This federal law says that if Hicks surrenders all his property, and commits no offense against the act, he shall be discharged from any obligation to pay this indebtedness. The ordinance of the city of Syracuse and the regulations of the fire department above quoted say that, if he fails or neglects to pay this debt in full, charges may be preferred against him for its nonpayment, and, on proof that he has not paid, he may be dismissed from his office or position in the fire department. Here is a plain conflict between the provisions of the national bankruptcy act and the ordinance of the city of Syracuse, and the rules and regulations of its fire department, above quoted. There can be no question which constitutes the paramount law of the land. Both cannot stand together. The ordinance and rules and regulations must yield. Proceedings against Hicks for his removal from the fire department must be stayed.

Broad and comprehensive power has been granted to the court of bankruptcy in this regard by the act itself. Section 2 of the act to establish a uniform system of bankruptcy throughout the United States, approved July 1, 1898, c. 541, 30 Stat. 545 [U. S. Comp. St. 1901, p. 3420], and amended February 5, 1903, c. 487, 32 Stat. 797 [U. S. Comp. St. Supp. 1903, p. 410], provides as follows:

"That the courts of bankruptcy as hereinbefore defined * * * are hereby made courts of bankruptcy, and are hereby invested, within their respective territorial limits as now established, or as they may be hereafter changed, with such jurisdiction at law and in equity as will enable them to exercise original jurisdiction in bankruptcy proceedings, in vacation in chambers and during their respective terms, as they are now or may be hereafter held, to * * * (15) make such orders, issue such process, and enter such judgments in addition to those specifically provided for as may be necessary for the enforcement of the provisions of this act. * * *"

To make sure that the courts of bankruptcy should have all the inherent powers of a court this was added to the section:

"Nothing in this section contained shall be construed to deprive a court of bankruptcy of any power it would possess were certain specific powers not herein enumerated."

It is true that the Revised Statutes of the United States provide (section 720 [U. S. Comp. St. 1901, p. 581]) that an injunction shall not be granted by United States courts to stay proceedings in state courts, "except in cases where such injunction may be authorized by any law relating to proceedings in bankruptcy." It was the purpose of the Congress of the United States to enact an efficient, enforceable law—one containing provisions sufficient for its own enforcement, which includes necessarily the protection of bankrupts who take advantage of its provisions. Will any one attempt to deny that a state law making it an offense to take advantage of the provisions of the bankruptcy act would be void? Would not this be true of such an act inflicting a penalty for its violation, collectible in a court of law? In either case, would not the bankruptcy court have power to interfere and enjoin the enforcement of such a provision against the bankrupt, especially during the pendency of the bankruptcy proceedings? Suppose a state should make a law that no person taking advantage of the bankruptcy act should be permitted to hold any office under the state, or that, if he held such office, he should, on taking advantage of the act, be removed therefrom. Can any one doubt that the bankruptcy court would have power to enjoin the officers of the state attempting to enforce such provisions, especially during the pendency of the bankruptcy proceedings?

This subject is well covered in Collier on Bankruptcy (4th Ed.) p. 23, where the author says, speaking of subdivision 15, above quoted:

"Subd. 15. To Enforce the Act by Necessary Orders, Process, or Judgments. This is the omnibus clause of the section. Generally speaking, it may be availed of to compel anything which ought to be done for, or to prevent anything which ought not to be done against, the enforcement of the law, provided the court of bankruptcy otherwise has jurisdiction of the person or the subject-matter. * * *

"Injunctions Other than Against Suits. The power to enjoin is inherent in the court of bankruptcy, as a court of equity. It includes the power to grant stays, conferred by section 11 of pending suits in other courts. That the broad phrasing of subdivision 15 amounts to an express ratification of this inherent power has not been doubted. The exercise of it, like the quasi criminal remedy of contempt, is essential to the due enforcement of the act."

The fact will be noted that no charge was preferred against Hicks until after he filed his petition in bankruptcy. The action of Bowen and Quigley, following that act of Hicks, is equivalent to a declaration on their part that no member of the fire department of the city of Syracuse can take advantage of the national bankruptcy act, and retain his place or membership in the department. Hence they are proceeding judicially, acting in a quasi judicial capacity, to try Hicks on the charge, in effect, that he has failed to pay the debt of P. Caulfield & Son, and propose, if they find the charge true, to impose sentence or inflict a penalty dismissing him from the department.

Already they have suspended him from duty and stopped his pay. It is urged that Hicks has ample remedy in the courts of the state, of New York. This contention cannot be maintained. Section 204 of the charter of cities of the second class, relating to "removal upon charges," ends with the declaration that "the decision of the commissioner shall be final and conclusive and not subject to review by any court." This provision, if valid, precludes Hicks from appealing to the courts of the state of New York from any decision the commissioner might render.

Regarded as a proceeding to collect the debt of Caulfield & Son, or compel its payment, or to impose a penalty or punishment for its non-payment, we find ample authority in the following cases for staying further proceedings: In re Charles S. Houston, 2 Am. Bankr. Rep. 107, 94 Fed. 114; Wagner v. Houston, 4 Am. Bankr. Rep. 596, 104 Fed. 133, 43 C. C. A. 445; In re Grist, 1 Am. Bankr. Rep. 89.

Impotent, indeed, is the federal court in bankruptcy, if persons taking advantage of the act may not be protected by it from the imposition of fines and penalties, or deprivation of office, place, or position, by tribunals of a state, for no other reason than that they are invoking its provisions and seek discharge from their indebtedness on surrendering all their property. This is payment of the debt, says the federal law, in so far, at least, that it deprives the creditor of all remedy for its collection.

The order will be that Patrick Caulfield, James Caulfield, John P. Quigley, the chief of the fire department of the city of Syracuse, N. Y., R. S. Bowen, and all other persons, be and are enjoined and restrained from further prosecuting the charge against said Allen M. Hicks, above referred to, until the expiration of 12 months from the date of the adjudication herein, unless the said Hicks shall sooner apply for a discharge, and in such case until the question of such discharge shall be determined.