## KANN v. KING.

## WEBB v. KING.

TAXES; VOID ASSESSMENTS; STATUTORY CONSTRUCTION; TAX SALES, REPORTS OF; LANDLORD AND TENANT; LEASE; EQUITY; FORFEITURE, RELIEF AGAINST.

1. The assessment of real estate in this District, in the name of a former owner who has been dead for twenty-five years, is a fatal irregularity

which, as between the true owner and a purchaser at a tax sale or his assignee, will invalidate all subsequent proceedings, including a tax deed issued to such purchaser. (Construing act of Congress of August 14, 1894, 28 Stat. at L. 282, chap. 287.)

2. The requirements of statutes regulating the matter of sales of real estate for nonpayment of taxes must be strictly pursued, in order to devest title from the owner.

3. Under the act of Congress of February 28, 1898, 30 Stat. at L. 250, regulating tax sales in this District, the failure by the collector of taxes to state with certainty in the report required to be made by him to the recorder of deeds of property sold at a tax sale, the amount of taxes due on a parcel of property sold, or the cost of sale, or the amount for which it was sold, will invalidate a tax deed issued to a purchaser at such sale.

4. A bill in equity by a lessee required by his lease to pay the taxes on the leased property, to be relieved against a forfeiture of the lease for default in paying taxes for a half year, on the ground of inadvertence and mistake, is not multifarious because it joins as a defendant with the lessor the holder of a tax certificate acquired under a sale of the property for the taxes which the lessee had failed to pay, where it appears that there was an arrangement between the defendants whereby the tax certificate was to be used to oust the lessee from the property and put the holder of the tax certificate in possession as lessee. (Following *Webb* v. *King,* 21 App. D. C. 141.)

Nos. 1456 and 1457. Submitted February 15, 1905. Decided March 8, 1905.

HEARING on separate appeals by the defendants from a decree of the Supreme Court of the District of Columbia in a suit to enjoin a landlord and tenant proceeding and to have a tax deed declared null and void.                              *Affirmed.*

The facts are sufficiently stated in the opinion.

*Mr. Wm. G. Johnson* for the appellants Louis Kann, Sigmund Kann, and Myer Cohen.

*Mr. R. Ross Perry* and *Mr. R. Ross Perry, Jr.,* for the appellant Henry Randall Webb.

*Mr. J. J. Darlington* and *Mr. Leon Trobriner* for the appellee.

Mr. Justice MORRIS delivered the opinion of the Court:

This case was formerly before this court on an appeal from an interlocutory order awarding an injunction *pendente lite* (*Webb* v. *King,* 21 App. D. C. 141); and the facts as then developed by the pleadings, and which have not been greatly, if at all, modified by the testimony that was subsequently taken, were stated in the opinion then rendered, and need not be here repeated at length. The cause comes now before us again on appeal from the final decree, wherein the court below found the issues in accordance with the complainant's bill, and decreed in accordance with the prayers of that bill.

The complainant, here the appellee, was the lessee of certain demised premises. Through inadvertence or negligence she permitted certain taxes which by the lease she was required to pay, to remain in arrears, and the property to be sold for the payment of such taxes, and a certificate of sale to be issued therefor, and finally a tax deed to be executed and recorded. For this it was sought to forfeit her lease; and she filed her bill in equity to be relieved from the forfeiture; to enjoin the proceedings that had been instituted to dispossess her; to have the tax certificate and the tax deed declared null and void; and to have the holders of them perpetually enjoined and restrained from setting them up. The paramount question in the case is that of the validity of these tax proceedings; and it will simplify the consideration of the other questions that are raised if we first dispose of this one.

But this question we think the Supreme Court of the United States has already determined for us in the cases of *Washington* v. *Pratt,* 8 Wheat. 681, 5 L. ed. 714; *Ronkendorff* v. *Taylor,* 4 Pet. 349, 7 L. ed. 882, and the comparatively recent case of *Marx* v. *Hanthorn,* 148 U. S. 172, 37 L. ed. 410, 13 Sup. Ct. Rep. 508.

1. The act of Congress of August 14, 1894, 28 Stat. at L. 282, chap. 287, which was in force at the time the tax proceedings in question were had, and which is yet in force, provides that "all real property in the District of Columbia, except

as hereinafter provided, shall be assessed [for taxation] in the name of the owner, or trustee or trustees of the owner, thereof;" that "all undivided real property of a deceased person may be assessed in the name of such deceased person until the same is divided according to law, or has passed into the possession of some other person or persons;" and that "all real property, the ownership of which is unknown, shall be assessed 'owner unknown.' "

The owner of the property involved in the present litigation was, and had been for upwards of twenty-five years, Mrs. Marianne A. B. Kennedy, who had inherited it in the year 1871 from a relative, Maria T. Gillis. On the assessment books of the District the property continued to be assessed in the name of Maria T. Gillis, although she had died in the year just named, and was advertised and sold in her name for default in the payment of taxes in the year 1899.

Now, it is very clear that this assessment did not comply with the requirement of the act of Congress. A deceased person cannot be the owner of property in the sense of the law. Especially cannot a deceased person continue for twenty-five years after his death to be the owner of property. Assessment and the other requirements of the tax laws are intended to warn the living owner that his property is being dealt with by the public authorities under their supreme power to devest title in the event of failure to pay the public dues; and that living owner is entitled to the benefit of that warning to its fullest extent, and to the most faithful compliance with the provisions of the statute. *Washington* v. *Pratt,* 8 Wheat. 681, 5 L. ed. 714. It will not do, therefore, to take a former owner, and continue his name until it suits the public authorities to change the assessment.

Provision is made by the statute, perhaps inadequate provision, for the ascertainment by the taxing officers of the names of the owners of property for this purpose of assessment; for the recorder of deeds and the register of wills are both required to report annually to the tax officers all transfers of real estate recorded in their respective offices. This does not seem

to cover the case of devolution of title by descent, except apparently in the case of a division of an estate and the execution of deeds of partition by the several parties in interest; and it is not apparent what steps the taxing officers are to take to ascertain the living owner of property when the former owner has departed this life, and there is perhaps only one heir and no division of the estate. And yet the law specifically requires such ascertainment of ownership, for it specifically provides that the assessment in the name of the deceased person may not be continued beyond the partition of the estate, or until the estate "has passed into the hands of some other person." The new owner is such other person; and the taxing officers must ascertain his identity as best they can, if they would have their proceedings entirely valid and indefeasible. Such is the positive doctrine of the case of *Washington* v. *Pratt.* And the result is that failure to assess in such name is a fatal irregularity, which, as between the true owner and the purchaser at a tax sale or his assignee, is sufficient to vitiate all the subsequent proceedings.

Again, in the act of Congress of February 28, 1898, 30 Stat. at L. 250, chap. 32 § 3, which regulates the matter of tax sales in this District, there is a provision that, within twenty days after the last day of sale, the collector of taxes shall file in the office of the recorder of deeds for the District a report in writing in which he shall give a statement of the property sold, the names of the persons to whom it is assessed, the amount of taxes due thereon, the name of the person to whom it has been sold, the amount for which it has been sold, the cost of sale, the date of sale, and the surplus, if any. The purpose of all this is very plain. It was to give further and explicit notice to the citizen whose property was affected and was about to be taken from him, to warn him of his danger, and to give ample information as to what was required to be done in order that he might relieve his property from its predicament. Under this act he is entitled to have all the details of the statute strictly complied with; and a failure of such compliance may suffice to vitiate all the subsequent proceedings.

In the present case the collector of taxes filed a report, which, so far as it relates to the property here in controversy, was as follows:

| Date. | Property Sold. | Items of Sale. | Amt. sold for. | Purchaser. |
|---|---|---|---|---|
| April 13. | | | | C. H. Wiltsie. C. H. Wiltsie. Do. |
| | Square 432 | 2d half of tax for year 1898. | 128 50 | |
| | Sublot A and improvements. | Penalty | 14 13 | |
| | To whom assessed | Watermain tax. | | |
| | Maria T. Gillis. | Interest from Assessment for Interest from Advertising | 1 20 | |

Now, it is very plain that this report does not comply with the requirements of the law. There is no statement of the amount of taxes due on the property, or of the cost of sale, or perhaps even of the amount for which it was sold. We might conjecture that the third and fourth columns are to be read together, and that the figures in the fourth column, under the head of "amount sold for," are also intended to indicate the amount of taxes due; but this would be only conjecture, and the statute requires certainty. For many less important defects than this, tax sales have been declared void; and it is believed that the universal tendency of decision throughout the States of our Union is that statutory requirements of this character must be strictly pursued in order to devest title. But in view of the decisions in the Supreme Court of the United States already mentioned it is unnecessary to cite further authority.

Various other alleged defects and irregularities have been pointed out in these tax proceedings, but we deem it unnecessary to consider them. The two which have been specified are, in our opinion, sufficient to vitiate the certificate and the deed that were issued in this case; and we must hold both the cer-

tificate and the deed to have been null and void as against the
appellee.

2. These instruments being null and void, the matter stands
as though they had never been issued,—although, of course,
they must be regarded as a cloud upon the title of this property,
which can be removed in a court of equity; and the situation,
therefore, is that there are taxes upon the property in arrears,
due and unpaid, for which the lessee is liable, and for the fail-
ure to. pay which the lessor seeks to enforce a forfeiture of the
lease.    And the lessee, claiming that her failure to pay at the
proper time was the result of inadvertence or misadventure, now
offers to pay them, and seeks to be relieved from the forfeiture
or threatened forfeiture.    This, we have already held in our
opinion on the former appeal, she is entitled to do, if the alle-
gations of her bill are borne out by the testimony in the case.

But the testimony makes it more plain than even the allega-
tions of the bill of complaint did that she is entitled to the re-
lief which she asks.    The testimony shows quite conclusively
that, while the lease required the annual taxes on the property
to be paid by the lessee, yet the invariable custom of the lessor
down to the time of the default had been to demand and re-
ceive the amount of the taxes from the lessee, and to pay the
taxes herself by her own agents.    For the taxes of the second
half of the year 1898, in connection with which the default oc-
curred, the lessor failed for some reason to make the usual de-
mand for the money wherewith to pay the taxes; and the lessee
was in the midst of financial trouble and distress caused by the
recent death of her husband, who had been the lessee down to
the time of his death.    The record shows to us quite plainly that
the default of the lessee was excusable under the circumstances,
and that no harm would be done to anyone by her relief from
the nominal forfeiture which she has incurred.

3. The defense of multifariousness in the bill of complaint is
again insisted on, as it was at the former hearing.    But we
think that what we said at that former hearing must suffice to
dispose of the objection now.    The determination of that ques-
tion depends upon the inquiry as to whether there was an ar-

rangement, or understanding, or combination, or whatever we may call it, between the defendants to the suit, whereby the tax certificate that had been issued against the property involved in the proceedings was to be acquired and used in the interest of the Kanns to coerce the appellee out of the property and to enable the Kanns to become the possessors or lessees of it. We find no evidence whatever in the record of any fraud or wrongdoing perpetrated by anyone concerned. We only find the evidence of a situation created by keen commercial rivalry and shrewd management, wholly untainted by wrongdoing, but still a situation from which injury is threatened to the complainant's rights of property, and against which she is entitled to be relieved. For that there was an arrangement between the defendants whereby the tax certificate was to be used to oust the complainant from the property, we think is too plain to be reasonably questioned. There was undoubtedly a concurrence of effort for that purpose, perhaps no formal combination or preconcerted action. But it matters not what we call it. The undoubted fact is that there was co-operation between the defendants to use the tax certificate to the detriment of the complainant's rights; and, there being such co-operation, the defense of multifariousness cannot prevail. The one purpose of the bill is to relieve the complainant from the effect of this tax certificate and of the tax title based upon it.

From what we have said, it follows, in our opinion, that the decree appealed from was right and just, and that it should be affirmed, with costs. And it is so ordered.          *Affirmed.*

An appeal by the appellants to the Supreme Court of the United States was allowed March 9, 1905.