[Crim. No. 1968. Second Appellate District, Division Two.—September 12, 1930.]

In the Matter of the Application of LESTER THOMAS LINDLEY for a Writ of Habeas Corpus.

Howard T. Mitchell for Petitioner.

Lloyd S. Nix, City Prosecutor, and Joe W. Matherly and F. W. Fellows, Deputies City Prosecutor, for Respondent.

SCHMIDT, J., *pro tem.*—Petitioner, Lester Thomas Lindley, in his amended petition for a writ of *habeas corpus,* sets forth that during the month of February, 1929, the California Vehicle Act as amended in 1927 was in full force and effect; that upon February 16, 1929, the petitioner was unfortunate in having an accident with his automobile resulting in one Julia Chavez filing an action in the Superior Court of the State of California, in and for Los Angeles County, against said petitioner for damages, which judgment became final on November 26, 1929; that said judg-

ment has not been satisfied and still remains unsatisfied; that upon April 11, 1930, the division of motor vehicles of the state of California, by reason of the provision of section 73, paragraph (g) of the California Vehicle Act (Deering's General Laws, 1929, Act 5128, p. 3451), suspended petitioner's license to operate a motor vehicle in this state, which order of suspension or revocation of petitioner's license was based solely upon the alleged violation of said paragraph (g) and not upon any other ground; that upon the thirtieth day of April, 1930, after said license had been revoked, petitioner drove an automobile upon a public highway in the city of Los Angeles, whereupon he was arrested and complaint issued pursuant to section 74 of the same act, and was tried by the municipal court for driving a car without a driver's license, the complaint filed in the municipal court setting forth in addition to the charge "after his chauffeur's license had been suspended and revoked and while his license remained suspended by reason of his failure to pay a final judgment within fifteen (15) days" as provided by said paragraph (g). At the trial all of the facts were stipulated to. The judge of the municipal court found the defendant guilty and imposed judgment of a fine of $15 or three days in jail. Petitioner being unable to pay the fine was thereupon committed to the city jail of the city of Los Angeles.

Petitioner claims that his conviction is illegal for the reason that said paragraph (g) is unconstitutional.

It is a fundamental rule of constitutional law that the matter of classification is in the first instance one for the legislative body, and in the second instance, a question of law for the courts as to whether the classification is a natural one. In subdivisions 1, 2 and 3 under subdivision (a) of section 73 of the California Vehicle Act certain provisions are made whereby licenses to drive will be revoked. Each of these three classifications concern the operation of the motor vehicle and therefore are natural classifications. Subdivision (g) provides that "The operator's or chauffeur's license and all of the registration certificates, of any person, in the event of his failure to satisfy every judgment within fifteen days from the time it shall have become final, rendered against him by a court of competent jurisdiction in this or any other state, or in a district court of the

United States, for damages on account of personal injury, or damages to property in excess of one hundred dollars, resulting from the ownership or operation of a motor vehicle by him, his agent, or any other person with the express or implied consent of the owner, shall be forthwith suspended by the chief of the division of motor vehicles, upon receiving a certified copy of such final judgment or judgments from the court in which the same are rendered and shall remain so suspended and shall not be renewed nor shall any other motor vehicle be thereafter registered in his name while any such judgment remains unsatisfied and subsisting, and until the said person gives proof of his ability to respond in damages, as defined in section 36½ of this act, for future accidents. . . . '' ■ The question involved in this case is: Is the provision just quoted a natural classification? A careful reading of the Motor Vehicle Act, particularly section 73, shows that revocation is provided for by reason of the operation of the motor vehicle. The portion of subdivision (g) above referred to makes the classification not one arising from the operation of the automobile but from the ability of the person to pay a judgment that may have been rendered against him. The classification is not a natural classification nor is it all-inclusive. It virtually says: ''If you have the ability to and do pay judgments rendered against you, you may drive your automobile no matter how negligent''; yet in the same breath it says to another individual: ''Because you cannot pay your judgment you cannot drive your automobile.'' It is a well known fact that the present use of a motor vehicle is frequently the true source of a man's ability to earn a livelihood for himself and his family. To deprive him of this privilege unnecessarily is not a reasonable police regulation. Many a person could not satisfy a judgment for damages within fifteen days, yet a longer length of time spent in his vocation might enable him to do so. Many vocations require the use of the motor vehicle. The classification provided for in subdivision (g) places an undue premium on the means to satisfy a judgment rather than upon the ability or care with which a person drives his motor vehicle.

The provision for cancellation of license to drive based upon the ability to satisfy a money damage judgment gives to the person of means a distinct advantage which has no

connection whatsoever with his ability to drive, and deprives another person of a valuable property right because of his lack of means, thus unfairly discriminating against him. This is in the nature of providing a penalty and amounts to a denial of the equal protection of the laws, and should not be tolerated.

The cases cited by respondent except one, concern the right of legislatures to enact a law compelling *all* owners of motor vehicles (1) to carry insurance against injuries resulting from the operation of their vehicles or (2) to furnish such insurance before license to drive will issue. Such a classification includes all persons in the same class and therefore is a proper exercise of police power. The one exception is *"In re Opinion of the Justices,"* 251 Mass. 569 [147 N. E. 681], given in response to order of the legislature requesting an opinion upon proposed legislation similar to subdivision (g). With all due respect to the opinion therein expressed I cannot agree that it is a proper classification.

The provision for revocation of license under consideration is discriminatory and unreasonable and therefore violative of section 11, article I, of the Constitution of this state. It is the taking of property without due process of law.

Petitioner is discharged.

WORKS, P. J., Concurring.—I concur.

In contending for the constitutionality of paragraph (g) of section 73 of the California Vehicle Act respondent places his principal reliance upon *Opinion of the Justices,* 251 Mass. 569 [147 N. E. 681], or it may be said, at least, that the other cases cited by him do not aid his contention. The Massachusetts case, strictly speaking, does not touch the question here involved, although it does announce certain general principles which the court has said, in another opinion filed on the same day, lead to the conclusion that such a statute as we have here is constitutional. The case to which we have last referred is *Opinion of the Justices,* 251 Mass. 617 [147 N. E. 680], and it does undoubtedly uphold the constitutionality of a statute similar, at least, to the one now before us. This case, although mentioned by

me after the one relied on by respondent, will be referred to in this opinion as the first Massachusetts case.

Subdivision (g) of section 73 of our statute provides that the licenses and registration certificates of any person, "in the event of his failure to satisfy every judgment within fifteen days from the time it shall have become final, . . . for damages on account of personal injury, or damages to property in excess of one hundred dollars, resulting from the ownership or operation of a motor vehicle by him, . . . shall forthwith be suspended. . . . ''

It is said in the first Massachusetts case: ''We think that the legislature may declare that no person shall have a license to operate a motor vehicle upon public ways until he has satisfied any outstanding judgment against him founded on previous operation of a motor vehicle. A statute of that nature may have a tendency to prevent conduct by a licensee capable of being the basis of such a judgment, and thus promote the public safety.'' Strictly speaking, the last sentence contained in this quotation puts forth a statement which is true only in a very limited sense. Such a statute tends to secure the payment of compensation to those who are the victims of negligence. It would have a very slight effect in causing a lessening of the negligence. Those who are negligent in the operation of their cars cannot be cured by being compelled to pay judgments against them. In truth, also, the statute has no effect whatever against tort-feasors who have property, as judgments against them may be enforced through the ordinary process of execution. Such persons, no matter how frequently they may be guilty of negligence in the operation of their cars, may continue to operate them without molestation, so far as this particular statute is concerned. And it is possibly true that the criminal records will show, in manslaughter or like cases, where pedestrians have been killed or other casualties have resulted through negligent driving, that a majority of the defendants are persons of wealth, or are in comfortable circumstances, at least. Surely, the columns of the newspapers are full of reports of just such cases. It is to be noted, too, that the cars of persons of means are operated, unless they be trucks, solely for pleasure. No matter how infrequent the commission of negligence by persons who are unable to pay judgments, such persons cannot continue to

operate their cars if a single judgment be rendered against them. And it is to be remembered that a large portion of these persons use their cars as a means of earning a livelihood. In short, a rich man, continually operating his car in a negligent manner and solely for pleasure, may offend again and again, may day by day rove the roads at an unlawful rate of speed, free from molestation even if successive judgments for damages be pronounced against him, while the poor man is deprived of the use of his car if he fails to pay a single judgment, even though he be ordinarily a careful driver, being thereby often deprived of his means of livelihood. It seems to me that such things cannot be, under the constitutional guaranties which protect rich and poor alike. It appears that such a statute cannot bear a proper relation to the exercise of police power, granting that the legislature has, as it undoubtedly does have, plenary power over such matters when properly considered. The statute is constitutionally defective because it is operative unequally, in so far as the question is concerned with which it assumes to deal, that is, the lessening of negligence. The enactment cannot reach many who are continually negligent, while it may take the property of those who have once been negligent but who are ordinarily prudent in the operation of their motor vehicles. Indeed, as remarked, in effect, in the foregoing opinion, the statute deals not at all, directly, with the subject to which, only, it could properly relate. It is not truly aimed at the subject of negligence, for the habitually negligent person may be utterly free from the effects of its operation, but it is designed to secure the payment of judgments by those who cannot ordinarily pay and to deprive them alone of the right to operate cars, this, be it plainly stated, not because they have been negligent but because they have not paid.

In the first Massachusetts case it is also said that such a statute as the court had under consideration "would have a tendency to keep off the highway those shown by their conduct to be dangerous to other travelers." This statement is, of course, in a measure true, but at the risk of some slight repetition let me say something about this particular language of the Massachusetts court. Only those, in the main, who are thus kept off the highway will be they who are forced into such a condition through the loss of a means

of livelihood. Nor will those who remain on the highway because of the payment of judgments against them, whether they be rich or poor, be thereafter in any considerable degree less negligent than they had been before. The negligent we will always have with us. The tendency to be negligent cannot be cast off like a coat. A certain portion of mankind will be careless in the operation of their motor vehicles because they cannot be otherwise, while a certain portion will be careful because they cannot be otherwise. There is as much difference between men in these respects as there is in the shapes of their noses, and while the form of the nasal feature may be altered by plastic surgery, the tendency of men to be careless is susceptible of no considerable amelioration, even by the payment of judgments against them obtained on the very score of their negligence. A proper exercise of the police power would be exhibited by a statute designed to keep from the roads all persons who have shown an incurable tendency to refrain from the exercise of due care in the operation of their cars, but not by one designed to deny the highways only to those who do not pay judgments against them, leaving those who do pay to rampage along the thoroughfares at will. It is not within the province of the courts, of course, to say what measures the legislature should adopt in the exercise of the police power, and the remarks made in the last preceding sentence are inserted merely for the purpose of drawing a contrast between what the legislature has attempted to do by paragraph (g) of section 73 of the California Vehicle Act and what it is conceived it might have done.

Thompson (Ira F.), J., concurred.