[Civ. No. 1339. Fourth Appellate District.—July 26, 1934.]

HARRY SHEEHAN et al., Petitioners, v. DIVISION OF MOTOR VEHICLES OF THE STATE OF CALIFORNIA, Respondent.

W. C. Dorris and R. W. Henderson for Petitioners.

U. S. Webb, Attorney-General, and Bayard Rhone, Deputy Attorney-General, for Respondent.

BARNARD, P. J.—This is an application for a writ of mandate in which the petitioners seek to compel the respondent to set aside certain orders revoking certain registrations of motor vehicles and certain licenses to operate motor vehicles previously issued to the petitioners, and to compel the respondent to recognize as valid and subsisting these operators' licenses and certificates of registration pre-

viously held by the petitioners. The matter is before us upon a demurrer to the petition.

The petition alleges, among other things, that the petitioners are husband and wife; that a judgment was entered against them in the Superior Court of Kern County based upon a complaint which alleged that the plaintiff therein suffered personal injuries on June 18, 1931, through the negligent operation of an automobile by Harry Sheehan, one of the petitioners herein, and one of the defendants in that action; that recovery was sought and had in that action against Justine Sheehan, the other petitioner here, solely on the ground that she was the owner of the automobile in question; that the petitioners have been and now are unable to satisfy said judgment in whole or in part and that said judgment remains wholly unsatisfied; that on June 18, 1931, these plaintiffs had a policy of insurance issued by the Pacific Coast Insurance Association, an insurance company authorized to do business in this state, covering liability for personal injuries arising out of the operation of the automobile in question in the sum of $5,000; that all premiums were paid and this insurance was in full force and effect on that date; that upon notice this insurance company admitted its liability and obligation to pay any judgment that might be recovered in said action and agreed to and undertook and commenced to defend the action; that thereafter and prior to the trial of the action this insurance company became insolvent and is now in process of liquidation by the insurance commissioner of this state; that the petitioners were compelled to defend said action at their own cost and expense and that they have received nothing whatever on account of said policy of insurance although their claim against the liquidator of said insurance company has been presented and allowed; and that the respondents have revoked and canceled the operator's license and registration certificates previously issued to these plaintiffs.

The contention here made is that section 73 (g) of the California Vehicle Act, as existing on June 18, 1931, violates section 1 of article I of the Constitution of California in that it is discriminatory and violates amendment 14 of the federal Constitution in that it deprives these plaintiffs of due process of law. It is contended that this section is unconstitutional unless so interpreted as not to permit the Division

of Motor Vehicles to cancel a license when the inability of the license holder to pay a judgment arises from the insolvency of his insurer. It may first be observed that this latter contention, regardless of any force it might have under a statute requiring compulsory insurance as a condition for the issuance of a license to operate a motor vehicle, has no application here. The statute here in question provides for a revocation of the license upon the failure to pay a judgment within fifteen days after the same becomes final and it is immaterial whether such failure results from a failure to carry insurance, from the insolvency of an insurance carrier or from the insolvency of the licensee. While good reasons might be advanced before a legislative body for the suggested exception, we are here concerned only with the power of the legislature to enact the law in question.

The only cases cited are *In re Lindley,* 108 Cal. App. 258 [291 Pac. 638], and *Watson* v. *Division of Motor Vehicles,* 212 Cal. 279 [298 Pac. 481]. The section was held unconstitutional in the first of these cases, while the majority opinion in the other case is to the contrary. It was pointed out in a concurring opinion, and is here argued by the petitioners, that what was said in the majority opinion concerning the constitutionality of this act is *obiter dictum.* Assuming that this case is not controlling as a precedent, we are in accord with the reasoning and conclusion expressed therein to the effect that this statute is neither unreasonable nor discriminatory.

The power to license carries with it the power to prescribe reasonable conditions precedent, and must and does include the power of revocation. That the licensee shall not interfere with the equal rights of other licensees is certainly a reasonable requirement and condition upon which to base the issuance and continuance of such a license. The one at fault in an automobile accident has interfered with the right of another in his use of the highway. In all cases the degree of such interference may be said to be greater where the damage done is not repaired, while in many cases, because of the financial condition of the victim, the failure to repair the damage done may result in a continuing interference, entirely depriving the injured party of that use of the highway to which he is entitled. To provide that the privilege represented by the license will be granted only

upon the condition that any damage done through the exercise of the privilege will be made good, would not be an unreasonable regulation. A provision making the continuance of the privilege dependent upon a similar condition seems equally reasonable. As was said in *In re Opinion of the Justices*, 251 Mass. 617 [147 N. E. 680]: "It may be thought by the legislature that such a judgment debtor, who did not do what the law required of him, as declared by the judgment, to repair damage already done by him, was not a fit person to be intrusted again with the responsibility of operating a motor vehicle upon the public ways." Such a provision is not unduly harsh and cannot be said to lack a proper foundation in common experience, in view of well-known conditions growing out of the inherently dangerous nature of the instrumentality used, coupled with the enormous increase in the number of such automobiles appearing on the highways in the hands of operators of every kind of experience and ability. In addition, the act in question may have a marked tendency to prevent negligent driving and a not inconsiderable effect in eliminating drivers who may be a menace to those properly using the roads.

It is argued that the section in question is discriminatory and that it favors the rich over the poor. However, the fact that one man may be more able to pay than another is merely incidental, as is the fact that in some cases the person benefited may be a poor man. Fundamentally, the distinction made is not one based upon the ability to pay, but is one based upon the proper use of a privilege. Not only is the provision effective only when the privilege granted has been abused, with a consequent interference with the rights of others, but in some cases the failure to pay for damage done may constitute a continuing interference with the right of another to use the highway.

In our opinion, the provision here attacked tends to secure the safety of the public and the equal rights of all in the use of the highways and is neither discriminatory nor an unreasonable regulation. "There is no inequality or discrimination in a constitutional sense from the standpoint of the judgment debtor. Those who do not pay their debts arising from their fault in the operation of a motor vehicle on the public way may be classified by the legislature as not worthy of a license to operate again." (*In re Opinion of the*

*Justices*, 251 Mass. 617 [147 N. E. 680, 681].) In the statute here in question an equal opportunity is offered to all, the conditions prescribed apply to all and the distinction made not only is based upon the way in which the privilege is used, but relates to and conserves the equal rights of all in the use of the highways.

In the case of *Watson* v. *Division of Motor Vehicles*, *supra*, no opinion was expressed as to the constitutionality of that portion of section 73 (g) of the California Vehicle Act which provides for the revocation of the license of an owner of an automobile when a final judgment for damages remains unpaid and when the damages in question resulted from the operation of the motor vehicle by his agent or by some other person with his express or implied consent. That question is directly presented here since judgment was rendered against the plaintiff wife solely by reason of her ownership of the automobile in question and not by reason of any negligence on her part in operating the same. We are unable to find any reasons for applying a different rule in the case of owners of automobiles thus involved in accidents which cause injuries or damage to others. Most of the reasons applying to the operator of a motor vehicle apply also to an owner who permits his vehicle to be operated under conditions which make him liable to another, and we think these reasons lead to the same conclusion.

A particular accident resulting in an unpaid judgment against the owner would not have happened had not the owner of the car furnished the operator with the dangerous instrumentality and permitted him to use the same on the highways and the owner thus assumes, in part at least, a responsibility for any interference with the rights of others that may occur. This responsibility is recognized and definitely imposed under our civil law and, in this particular case, the same has resulted in a judgment against the owner and his responsibility and liability have taken the form of a debt covering or representing the damage he has been instrumental in causing. If such an owner refuses or neglects to repair the damage already caused in part by the manner in which he has used the license previously issued to him, it cannot be said that a reasonable ground does not exist for revoking that license and refusing to issue

another until he has righted the wrong thus done to others who had an equal right to the use of the highway.

The statute in question is uniform and general in its application and interferes with no one until he misuses the license previously granted and then fails to repair the wrong for which he is responsible. Under such circumstances, we think the provision for the revocation of the license of one coming within the provisions of the act is reasonable and within the constitutional powers of the legislature.

The demurrer is sustained and the alternative writ of mandate is discharged.

Jennings, J., concurred.

Marks, J., being absent, did not participate in this opinion.

A petition for a rehearing of this cause was denied by the District Court of Appeal on August 20, 1934, and an application by petitioners to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on September 24, 1934.