[Civil No. 3836.   Filed January 4, 1937.]

[63 Pac. (2d) 653.]

STATE OF ARIZONA, at the Relation of JOHN L. SULLIVAN, Attorney General, Appellant, v. THOMAS PRICE, STELLA PRICE, SIDNEY SMITH and FERN C. SMITH, Appellees.

Mr. John L. Sullivan, Attorney General, Mr. A. I. Winsett, Special Assistant Attorney General, and Mr. Richard F. Harless, Assistant Attorney General, for Appellant.

Mr. John M. Levy and Mr. Allan K. Perry, for Appellees.

ROSS, J.—The State, at the relation of the Attorney General, seeks a declaratory judgment as to the validity and constitutionality of those provisions of section 1664, Revised Code of 1928, as amended by chapter 45, Laws of 1935, that deprive a person of the right to operate a motor vehicle against whom a judgment for damages of $100 or more to property, or for any amount for bodily injury or death, has been rendered as the result of the operation by him of a motor vehicle, unless and until he has satisfied such judgment, and make it the duty of the motor vehicle division of the state highway department to see that he does not operate a motor vehicle by suspending his license and refusing to issue to him a new license. Subsections (c), (d), (e), and (g), § 1664, as amended.

The case was decided upon the pleadings, judgment being entered for defendants upholding the validity and constitutionality of the law. Plaintiff has appealed.

The State has quite an elaborate highway code (secs. 1557–1726, Rev. Code 1928). The highway commission, consisting of five members, is vested with the control of the state's highways. Section 1566 of such code makes the Attorney General the legal adviser of the highway department and provides that he shall prosecute and defend in the name of the State all actions necessary to carry out the provisions of the highway code.

■ The appellees in their brief suggest that the complaint is defective, in that it fails to show that the State is interested in the questions raised. The point now made was not called to the attention of the trial court by demurrer or otherwise. If it had been, the complaint could easily have been amended to state a cause of action. By a very liberal construction it is possible to say the complaint presents a case where the highway department and the owners of two final judgments for torts by automobiles, to wit, Thomas and Stella Price and Sidney and Fern C. Smith, have disagreed as to the meaning of the law and also as to its constitutionality. It is alleged in the complaint that the Attorney General has advised the highway commission that the law is too vague and indefinite to be enforceable, as also that it violates section 4, article 2 of the state Constitution, in that it deprives somebody (but whom it is not alleged) "of property and liberty without due process of law." It is essentially the rights of the judgment debtors to operate, notwithstanding such judgments, their automobiles that are involved more than anyone else's.

While the complaint is anything but a model, it was treated as stating a cause of action at the trial, and

we will so regard it here so that those whose duty it is under the law to enforce it may quickly know whether they should do so or not, or if the law is defective it may be cured at the coming session of the legislature.

■ The first point made by the Attorney General, who is prosecuting this appeal, is that the law is so vague, indefinite, and uncertain as to render it unenforceable, and this contention grows out of subsection (c) of section 1, chapter 45, particularly the italicized part thereof, reading as follows:

"(c) The division shall . . . suspend the operator's and chauffeur's license and all registration certificates or cards and registration plates issued to any person *upon receiving authenticated report as hereinafter provided that such person has failed for a period of thirty days to satisfy any final judgment in amounts and upon a cause of action as hereinafter stated.*"

It is said there is no provision "hereinafter" for the "authenticated report" mentioned, and that therefore the motor vehicle division cannot know when it should act to deprive a person of his right to operate a motor vehicle. The authenticated report referred to is a report that the judgment debtor "has failed for a period of thirty days to satisfy any final judgment in amounts and upon a cause of action as hereinafter stated." Following said subdivision (c) are mentioned five different ways of satisfying a judgment, all of which ways must appear or be made a record in the case in which the judgment was rendered. (i), 1, 2, 3, 4, and 5. If the judgment debtor fails for thirty days after the judgment becomes final to satisfy the judgment, the records of the court in which the judgment was rendered will show that fact, or that it is barred by the five-year limitation. A certified copy of such judgment, dated thirty days after the judgment becomes final and showing it to be unsatisfied,

would be all the evidence the motor vehicle division needs to cancel or suspend an operator's license or registration certificate.

Section 4458, Revised Code of 1928, reads:

"Certified copies, under the hands and official seals if there be seals, by all state and county officers of all documents properly on file with such officers, shall be received in evidence as the originals might be received."

Anyone can obtain such certified copy of judgment by paying the clerk of the superior court the required fee. Section 1461, Id. The "authenticated report" mentioned in subdivision (c) is not more nor less than a certified copy of the judgment by the custodian thereof, to wit, the clerk of the superior court and a showing that it is unsatisfied. 6 C. J. 863.

We conclude that the law is quite definite and certain in its terms and that those whose duty it is to enforce it should have no trouble in so doing.

■ The Attorney General next contends that section 1664, as amended by chapter 45, violates section 4, article 2 of the state Constitution, in that it, in compelling a person, before he may operate a motor vehicle, to pay or satisfy any judgment for damages obtained against him in the operation thereof, deprives such person of his liberty and property without due process. The only case cited in support of this proposition is *Ex parte Lindley,* decided by the District Court of Appeal (an intermediate court) and reported in 108 Cal. App. 258, 291 Pac. 638, which holds that a law, much like ours, denies to the citizens the equal protection of the law, in that it predicates the right to operate a motor vehicle upon one's financial ability to pay damages caused thereby rather than on his care and skill in such operation; also that the classification together of all persons who have suffered

a judgment for causing damages to property or persons in operating their motor vehicles, and depriving them unless and until they pay such judgment of the right to operate a motor vehicle, was an unnatural classification resulting in discrimination and, further, was not a reasonable police regulation.

This is the only case cited by the Attorney General or found by us holding such a law unconstitutional, and it has been repudiated by the highest court of the state in which it was rendered. In *Watson* v. *State Division of Motor Vehicles*, 212 Cal. 279, 298 Pac. 481, 482, the Supreme Court, in its opinion rendered April 2, 1931, after reciting the reasons given in *Ex parte Lindley, supra,* for striking down the law, said:

"We do not believe that section 73g, *supra* [Cal. Vehicle Act, St. 1929, p. 561], is unconstitutional for the reasons advanced in the Lindley decision. The legislative power to regulate travel over the highways and thoroughfares of the state for the general welfare is extensive. It may be exercised in any reasonable manner to conserve the safety of travelers and pedestrians. Since motor vehicles are instruments of potential danger, their registration and the licensing of their operators have been required almost from their first appearance. The right to operate them in public places is not a natural and unrestrained right, but a privilege subject to reasonable regulation, under the police power, in the interest of the public safety and welfare. *Hendrick* v. *Maryland,* 235 U. S. 610, 622, 35 Sup. Ct. 140, 59 L. Ed. 385. The power to license imports the further power to withhold or to revoke such license upon noncompliance with prescribed conditions. In our opinion, the revocation of the privilege for nonpayment of judgments arising from negligent operation of motor vehicles is a reasonable regulation, and one which may well tend to eliminate from the highways persons shown to be dangerous to life and property. There is nothing arbitrary or unreasonable in such a requirement. . . .

"Nor do we think section 73g, *supra,* favors the rich over the poor, and is for that reason, discrimina-

tory. The fallacy in this argument lies in the failure to distinguish between equality of opportunity and ability to take advantage of the opportunity which is offered to all. The equality of the Constitution is the equality of right and not of enjoyment. A law that confers equal rights on all citizens of the state, or subjects them to equal burdens, is an equal law. *State v. Griffin,* 69 N. H. 1, 39 Atl. 260, 264, 76 Am. St. Rep. 139, 41 L. R. A. 177. So long as the statute does not permit one to exercise the privilege while refusing it to another of like qualifications, under like conditions and circumstances, it is unobjectionable upon this ground. A New York statute, requiring those engaged in the business of carrying passengers for hire in motor vehicles to file a policy of insurance or a surety or personal bond conditioned for the payment of any judgment recovered against the operator of the motor vehicle, was held to be constitutional (*Packard* v. *Banton,* 264 U. S. 140, 44 Sup. Ct. 257, 68 L. Ed. 596), even though the same argument might be made against it as petitioner urges against section 73g, *supra,* for it is entirely conceivable that a poor taxi driver could not afford the expensive insurance, or would be unable to furnish the necessary bond, while the thriving taxicab corporation, with ample capital at its disposal, could secure the required guarantees· and operate regardless of the negligence of its drivers.''

This case quotes extensively from *In re Opinion of the Justices to the Legislature of Massachusetts* (found at 251 Mass. 617, 147 N. E. 680), which advises as follows:

''We think that the Legislature may declare that no person shall have a license to operate a motor vehicle upon public ways until he has satisfied any outstanding judgment against him founded on previous operation of a motor vehicle.''

The reasons given in the *Opinion of the Justices, supra,* to sustain the constitutionality of the law meet practically all the objections by learned and ingenious counsel.

The Watson case is approved in *Sheehan* v. *Division of Motor Vehicles,* 140 Cal. App. 200, 35 Pac. (2d) 359, by the district court of appeal, fourth district, which decision the Supreme Court of California refused to review.

In *Garford Trucking, Inc.,* v. *Hoffman,* 114 N. J. L. 522, 177 Atl. 882, 885 (decided March, 1935), the court, in passing upon a law denying a motor vehicle license to a person until he had satisfied an outstanding judgment founded on previous operation of a motor vehicle, said:

"Substantially similar legislation, to that herein complained of, has been enacted by many of our sister states. Courts, state and federal, have uniformly upheld and sustained, under the police power, such regulatory legislation provided such regulation bears a direct relationship to the public safety; and that it is reasonable and not arbitrary. The financial responsibility law of our state seeks to impose a penalty not for the failure to pay a judgment, that is merely incidental, but rather does it impose a penalty for negligent driving. It, therefore, bears a direct relationship to public safety; it is fair and reasonable and is not arbitrary. The following are but a few of the many illustrative cases: *West* v. *Asbury Park,* 89 N. J. L. 402, 99 Atl. 190; *Peoples Rapid Transit Co.* v. *Atlantic City,* 105 N. J. L. 286, 144 Atl. 630, affirmed *Parlor Car De Luxe Coach Co.* v. *Atlantic City,* 106 N. J. L. 587, 149 Atl. 893; *Garneau* v. *Eggers,* 113 N. J. L. 245, 174 Atl. 250; *Watson* v. *State Division of Motor Vehicles,* 212 Cal. 279, 298 Pac. 481; *Hendrick* v. *Maryland,* 235 U. S. 610, 35 Sup. Ct. 140, 59 L. Ed. 385; *Kane* v. *New Jersey,* 242 U. S. 160, 37 Sup. Ct. 30, 61 L. Ed. [222] 223; *In re Opinion of the Justices,* (1925) 81 N. H. 566, 129 Atl. 117 [39 A. L. R. 1023]; *Morris* v. *Duby,* 274 U. S. 135, 47 Sup. Ct. 548, 71 L. Ed. 966; *Standard Oil Co.* v. *Marysville,* 279 U. S. 582, 586, 49 Sup. Ct. 430, 73 L. Ed. 856; *Sproles* v. *Binford,* 286 U. S. 374, 388, 389, 52 Sup. Ct. 581, 76 L. Ed. 1167.

"It is within the legislative power of a state to enact that no person shall have a license to operate a motor

vehicle on the public ways until such person has satisfied an outstanding judgment against him founded on previous operation of a motor vehicle. *In re Opinion of Justices,* (1925) 251 Mass. 617, 147 N. E. 680; and the state has the like power to require, by enactment, the furnishing of liability insurance prior to the issuance of a license, as a means of protecting those who use the highways. [Citing cases.]''

In *Commonwealth* v. *Funk,* 323 Pa. 390, 186 Atl. 65, 68 (decided June, 1936), the court treated the power of the legislature over the commonwealth's highways as plenary and elementary and the permission to operate a motor vehicle as a mere privilege, its enjoyment depending upon compliance with the conditions upon which it was granted and subject to regulation and control by the state as it sees fit. Among other things, the court said:

''Automobiles are vehicles of great speed and power. The use of them constitutes an element of danger to persons and property upon the highways. Carefully operated, an automobile is still a dangerous instrumentality, but, when operated by careless or incompetent persons, it becomes an engine of destruction. The legislature, in the exercise of the police power of the commonwealth, not only may, but must, prescribe how and by whom motor vehicles shall be operated on the highways. One of the primary purposes of a system of general regulation of the subject matter, as here by the Vehicle Code, is to insure the competency of the operators of motor vehicles. Such a general law is manifestly directed to the promotion of public safety and is well within the police power. Even if the license were a right of property, which it is not, it would be held in subordination to such reasonable regulations by the state as are clearly necessary to preserve the safety, health, and morals of the people. The enforcement of these regulations by revocation or suspension of the privilege is not the taking of property without due process of law.''

We conclude that section 1664, *supra,* as amended by chapter 45, *supra,* violates no provision of our Con-

stitution, especially section 4, article 2 thereof, but is a valid exercise of legislative power and authority. While its enforcement may not render the highways of the state perceptibly safer, that being its object, it meets the sanctions of the Constitution. .

The many fatalities in this state and throughout the nation from the operation of motor vehicles on the public highways justify the public in taking every available legal and constitutional precaution to minimize the slaughter.

When the records show approximately 35,000 persons were killed during 1936 in motor vehicle accidents in this country, one wonders if the statement recently appearing in the press, that 85 per cent. of the common run of our streets have minds on a par with children of fourteen years of age, is not about correct. We believe in no state is a child of fourteen years of age permitted to operate an automobile, yet most of the adults, according to the above figures, with such a child's mind may. One of the methods of disciplining children is to deny them the things they want most until and unless they obey the rules of the household. It is this natural homely principle that the legislature invokes when it says: "You shall not operate a motor vehicle until and unless you repair past damages to persons and property caused through your negligent operation of a motor vehicle." To many people the . right to own and operate a motor vehicle has become an obsession, and to deprive them of such is as severe a punishment as can be reasonably inflicted. Besides, its prompt enforcement will be a most wholesome example to others that like treatment will be theirs in similar circumstances.

The judgment of the lower court is affirmed.

McALISTER, C. J., and LOCKWOOD, J., concur.