### REITZ v. MEALEY, Com'r of Motor Vehicles.

### No. 28886.

District Court, N. D. New York.

Aug. 14, 1940.

Before L. HAND, Circuit Judge, and COOPER and COXE, District Judges.

Harry A. Allan, of Albany, N. Y., for plaintiff.

Jack Goodman, of Albany, N. Y., for defendant.

L. HAND, Circuit Judge.

This is a motion made in an action brought to enjoin the Commissioner of Public Vehicles of New York from suspending the plaintiff's driver's license as a chauffeur. The plaintiff is a bankrupt, duly adjudicated on June 21, 1940, but his discharge has not been granted, nor does it appear that the referee has fixed any time under § 12 of the Bankruptcy Act, now section 337, 11 U.S.C.A. § 737, within which creditors must file their specifications of objection. The defendant has filed an answer, admitting all the essential facts upon which the suspension of a driver's license depends under § 94-b of the Vehicle and Traffic Law of New York, Consol.Laws, c. 71. These are that judgment shall be recovered against the licensee for damages for injuries to person or property, resulting from the operation of a motor-car, that he shall not pay the judgment within fifteen days, that the judgment creditor shall in writing ask the clerk of the court where the judgment is entered to forward a certified copy of it to the commissioner of public vehicles, and that the clerk shall do so. The section then directs the commissioner to suspend the driver's license for three years unless he pays the judgment meanwhile, and even if he does, not to restore it within that time, or thereafter, unless he gives the security, required by '§ 94-c of the act, to protect any whom he may injure in the future. The legislature added a proviso in 1936 that upon consent in writing of the creditor the commissioner might restore the license in any case for six months, and for as much longer thereafter as the creditor's consent remains outstanding; but again only in case the debtor gives the security required by § 94-c (Laws 1936, c. 448). The general plan of the section is apparent. Although no compulsory insurance is made a condition upon granting them, all licenses are issued subject to two conditions: First, that after one accident in which the judgment of a court has found the licensee at fault, his license will be permanently cancelled unless he takes out insurance; and second, that in any event it will be suspended for such part of three years as the judgment remains unsatisfied, unless the creditor consents to its restoration.

It would have been more regular to proceed by petition in the bankruptcy proceeding, as this "action" is strictly a "controversy" in bankruptcy, ancillary to the main proceeding; but, since the difference is only one of form, we will disregard it. We have already held in Healey v. Murnaghan, 34 F.Supp. 203, that we have jurisdiction under § 11, 11 U.S.C.A. § 29, to enjoin the commissioner; and that, after the clerk has remitted the judgment to him, it is necessary to call together a court of three judges under § 380 of Title 28

U.S.Code, 28 U.S.C.A. § 380. The question is therefore now inescapably presented whether the section is constitutional.

■ The bankrupt attacks it upon two grounds: First, that it violates the Fourteenth Amendment; and second, that by impairing the effect of a discharge it conflicts with § 17 of the Bankruptcy Act, 11 U.S.C.A. § 35. The first point presents little difficulty. There could be no possible complaint, if the legislature, instead of requiring all drivers to take out insurance, had required only those to do so, who had been once found guilty of careless driving. The only question that can be raised is whether it contradicts that purpose to add the second condition; i. e. that the license will be suspended for three years unless the licensee pays the judgment. That was the form of the section before 1936, and that we shall consider first. The effect of this was to make the license security for any damage done through the licensee's carelessness, and that was well calculated to increase his care. Indeed—though long use has accustomed us to its acceptance—perhaps insurance against liability for personal fault without some attendant means of enforcing care (such as exists, for example, in the case of marine insurance) always serves somewhat to dampen caution; at least reasonable people might think so, and for that reason a legislature might forbid any insurance whatever against the first few thousand dollars of liability for negligent driving so that drivers should have a pecuniary incentive to avoid collision. This section before 1936 had in substance such a result, and for that reason it did not conflict with the Fourteenth Amendment. So a "statutory court" held in Munz v. Harnett, D.C., 6 F.Supp. 158, and there have been several other decisions elsewhere, upholding similar statutes. Watson v. Division of Motor Vehicles of California, 212 Cal. 279, 298 P. 481; Opinion of the Justices, 251 Mass. 617, 147 N.E. 680; Garford Trucking, Inc., v. Hoffman, 114 N.J.L. 522, 177 A. 882; Sheehan v. Division of Motor Vehicles, 140 Cal.App. 200, 35 P.2d 359; State v. Price, 49 Ariz. 19, 63 P.2d 653, 108 A.L.R. 1156; Nulter v. State Road Comm., 119 W.Va. 312, 193 S.E. 549, 194 S.E. 270.

■ The argument that the section conflicts with § 17 of the Bankruptcy Act is more plausible. It seems to us at least very doubtful whether, as was said in Munz v. Harnett, supra, D.C., 6 F.Supp. 158, it is here relevant that a discharge does not extinguish the debt, but merely tolls the remedy. Whether the section can be justified or not, certainly power to suspend the driver's license is in effect a means of collecting the debt; it takes away his livelihood until he pays, and its imposition lies in the creditor's hands. The fact that the section adds the sanction that the driver, once found negligent, must in any event give security for the future, does not obliterate this; each condition is independent of the other. Therefore, if § 17 must be read as relieving bankrupts of all sanctions for the collection of dischargeable debts, no matter what other public purpose they may serve, the section is invalid, for the Bankruptcy Act is paramount. We do not think that the section so much impedes the states in their polity. Inability to pay one's debts is not irrelevant in determining one's fitness for many kinds of activity. In Re Hicks, D.C., 133 F. 739, for example, a city ordinance had provided that no one should be a municipal fireman who did not pay his debts, and the court held the ordinance invalid because it conflicted with the Bankruptcy Act. The ruling seems to us plainly wrong; the city might have good reasons for excluding from a position so vital to its welfare men who were so irresponsible that they would not live within the salaries given them. The fact that in doing so, the ordinance necessarily acted as a sanction for the collection of the debts was not material; the city was still entitled to make its own standards for admission to its fire department. The same reasoning applies here. Drivers of motorcars are a selected class, and of these those who suffer judgments for faulty driving are presumably less likely to be safe drivers than the average. Out of this number to discipline only those who cannot pay judgments against them might rationally be a further step in the same direction, for it is not unreasonable to say that among careless drivers, those are apt to be more careless who have no financial interest at stake. It is enough if the standard chosen works well on a whole; legislation is inevitably a more or less rough process, and need aim at no more than average success.

We have hitherto considered the section as it stood in 1936 before the amendment which gave the creditor power to consent to the restoration of the license, and before he alone could set the machinery in

motion. The plaintiff argues that after these amendments at any rate, if not before, the section became only a remedy for the collection of debts. As to the amendment of 1936 he says that, even if it helped to insure safe driving to make the driver's license security for any judgment against him, it did not further that policy to give the creditor power to restore it; for it would be absurd to say that out of those drivers who have been found both negligent and financially irresponsible, those alone should be disciplined who could not persuade their creditors to be lenient. Yet it is doubtful whether the amendment made any very substantial change. The original statute in fact gave the creditor power at any time to restore the license by a complete satisfaction of the judgment; and and the amendment merely added to this by enabling him to withdraw his consent, once given, after six months. In any case, whether that change conflicted with § 17, or could be reconciled with the original scheme, we need not decide for reasons that will appear.

The commissioner defends the amendment of 1939 by saying that it was a fair implementation of the purpose of the original section, because it merely relieved the clerk of an irksome duty. He had been obliged to find out whenever a judgment had remained unpaid for fifteen days, whether it was for damages due to negligent driving. Instead of this the amendment set up an automatic system depending upon the creditor's interest in starting the clerk into action. This distinction is, however, more apparent than real because under the section as it stood before 1939, the creditor had the same incentive and he was as likely as thereafter to advise the clerk of the judgment, after which the clerk was bound to proceed. The only change was that after 1939 the clerk could not proceed sua sponte, and that the amendment did therefore in theory allow the creditor to hold off the suspension. But again, not only could he have done that before 1939 by a satisfaction of the judgment, but the chance that the clerk would have acted without being prodded by the creditor must have been very remote. This amendment also really made very little change in substance.

 However, we need not pass on the constitutionality of either of the amendments, for it is well settled in New York, as elsewhere, that a statute itself consti-

tutional, is not affected by an unconstitutional amendment; the amendment is brutum fulmen and drops out as though never passed. People ex rel. Farrington v. Mensching, 187 N.Y. 8, 22, 23, 79 N.E. 884, 10 L.R.A.,N.S., 625, 10 Ann.Cas. 101; Markland v. Scully, 203 N.Y. 158, 166, 96 N.E. 427; People v. C. Klinck Packing Company, 214 N.Y. 121, 140, 108 N.E. 278, Ann.Cas.1916D, 1051; Buffalo Gravel Corp. v. Moore, 201 App.Div. 242, 248, 194 N.Y. S. 225, affirmed on other grounds 234 N.Y. 542, 138 N.E. 439. This doctrine is really no more than an instance of another doctrine, which happens to be especially favored in New York, that a statute will survive the excision of unconstitutional parts, unless it is apparent that the legislature would not have enacted it with the invalid parts out of it. New York Central & H. R. R. Co. v. Williams, 199 N.Y. 108, 116, 92 N.E. 404, 35 L.R.A.,N.S., 549, 139 Am.St.Rep. 850; People v. Beakes Dairy Co., 222 N.Y. 416, 431, 432, 119 N.E. 115, 3 A.L.R. 1260; People ex rel. Alpha P. C. Co. v. Knapp, 230 N.Y. 48, 60, 129 N.E. 202; People v. Mancuso, 255 N.Y. 463, 474, 175 N.E. 177, 76 A.L.R. 514; Bronx G. & E. Co. v. Maltbie, 268 N. Y. 278, 292, 197 N.E. 281; Gaynor v. Marohn, 268 N.Y. 417, 430, 198 N.E. 13. In the case at bar the clerk did remit a certified copy of the judgment to the commissioner; and it makes no difference whether he did so upon the creditor's demand, or sua sponte. The creditor has made no attempt to restore the license, and may never do so; if he does, the commissioner will have to decide whether or not to comply with his demand. As things stand, we need decide therefore only upon the act as it was in 1936, and we agree with Munz v. Harnett, supra, D.C., 6 F.Supp. 158, that it was valid.

The temporary injunction will be vacated, and the complaint will be dismissed.

COOPER, District Judge (dissenting).

The writer cannot concur with the majority opinion for the reasons appearing herein.

Section 94-b as it was in 1933 was held a valid exercise of the State's police power in the case of Munz v. Harnett, D.C., 6 F. Supp. 158, decided December 20, 1933.

As the Section then read it was the duty of the Commissioner of Motor Vehicles, upon receiving a certified copy of an unsatisfied judgment, to forthwith suspend the op-

erator's or chauffeur's license and all the registration certificates of any person "in the event of his failure within fifteen days thereafter to satisfy every judgment * * * for damages on account of personal injury, including death, or damages to property in excess of one hundred dollars, resulting from the * * * operation of a motor vehicle by him, his agent, or any other person for whose negligence he shall be liable and responsible." Laws 1931, c. 669.

The section further provided that such license and registration certificate "shall remain so suspended and shall not be renewed nor shall any other motor vehicle be thereafter registered in his name while any such judgment or judgments remain unstayed, unsatisfied and subsisting, until said judgment or judgments are satisfied or discharged, except by a discharge in bankruptcy, to the extent of or at least five thousand dollars for an injury to one person in one accident, and to the extent of ten thousand dollars for an injury to more than one person in one accident, and to the extent of one thousand dollars for an injury to property in any one accident, and until the said person gives proof of his ability to respond in damages, as required in section ninety-four-c of this chapter for future accidents."

The section also provided as follows: "It shall be the duty of the clerk of the court, or of the court, where it has no clerk, in which any such judgment is rendered, to forward immediately, after the expiration of said fifteen days as aforesaid, to such commissioner a certified copy of such judgment or a transcript thereof."

It will thus be seen that the provisions were mandatory for the permanent suspension of the operator's or chauffeur's license and registrations until judgments are paid to the extent prescribed in the statute and the liability insurance furnished as provided in Section 94-c.

Suspension of license automatically followed failure within fifteen days to pay the judgment to the extent prescribed to give liability insurance against future accidents.

The negligent and defaulting driver or owner could never again have operator's or chauffeur's license or registration certificate until he paid the judgment to the extent specified and gave the liability insurance required (by section 94-c) as proof of his ability to respond in damages for future accidents.

By 1936 the period of suspension because of nonpayment of the judgment specified was reduced to three years, but the same proof of ability to respond in damages for future accidents by furnishing liability insurance was required.

In 1936 the statute was further amended to read as follows: "Provided, however, if the judgment creditor consents in writing that the judgment debtor be allowed license and registration, the same may be allowed for six months from the date of such consent by the commissioner and thereafter until such consent is revoked in writing, if proof of ability to respond in damages is furnished in accordance with the provisions of this chapter." Laws 1936, c. 448.

In 1939, Section 94-b was re-enacted, including the above amendment of 1936 and by inserting in the section the words italicized in the quotation from the section: "It shall be the duty of the clerk * * * to forward immediately, *upon written demand of the judgment creditor or his attorney* * * * a certified copy of such judgment or a transcript thereof." This insertion is a direction to the Clerk to forward copy of the judgment to the Commissioner of Motor Vehicles *upon written demand* of the judgment creditor and not otherwise. This means that without such demand the clerk has no duty.

It is thus clear that since the 1939 re-enactment of section 94-b, nothing happens to the judgment debtor unless the judgment creditor wills it so. Except for such action by the judgment creditor, the debtor may apparently drive for the rest of his life without paying the judgment and without obtaining any liability insurance.

On the other hand, action by the judgment creditor will prevent the judgment debtor driving for a single day unless the latter comes to terms with the creditor.

The creditor has but to make written demand on the clerk and the latter must forward "immediately" to the commissioner and the commissioner must thereupon suspend the debtor's license.

The provision inserted in the statute in 1936 and now a part thereof, that if the judgment creditor consents in writing license "may be allowed" by the Commissioner for six months and thereafter until such consent is revoked in writing, is mandatory in legal effect in the absence of any provision that license may be allowed "within the discretion of the commissioner" or "with the approval of the commissioner."

"May" must be construed as "shall" when the context or subject matter require such construction. Rock Island County Supervisors v. United States, 4 Wall. 435, 18 L. Ed. 419.

In United States v. Thoman, 156 U.S. 353, 359, 15 S.Ct. 378, 380, 39 L.Ed .450, it is said: "It is a familiar doctrine that, where a statute confers a power to be exercised for the benefit of the public or of a private person, the word 'may' is often treated as imposing a duty, rather than conferring a discretion. Mason v. Fearson, 9 How. 248 [13 L.Ed. 125]; Washington v. Pratt, 8 Wheat. [681] 687 [5 L.Ed. 714]; [Rock Island County] Supervisors v. United States, 4 Wall. 435 [18 L.Ed. 419]."

In People ex rel. Doscher v. Sisson, 222 N.Y. 387, 395, 118 N.E. 789, 791, it was held: "The authorization created by the word 'may' was mandatory and not permissive. It is a general, although not inflexible, rule that permissive words used in statutes conferring power and authority upon public officers or bodies will be held mandatory where the act authorized to be done concerns the public interest or the rights of individuals." (Citing cases).

It will be seen that this section makes the Commissioner of motor vehicles a disguised collection agent for the judgment creditor. All public policy of protection for the public is eliminated. No longer must the non-paying judgment debtor inescapably lose permanently, or for three years, his right to operate a motor vehicle, unless he pays the judgment to the extent defined in the section.

He now has the privilege to operate the motor vehicle without compliance with the statute as it was, but that privilege is within the sole control of the judgment creditor. He must bargain with the creditor for installment payments or other consideration satisfactory to the creditor.

If terms are not made, the judgment creditor makes written demand on the clerk of the Court and the latter is required to forward immediately to the Commissioner a certified copy of the judgment. The Commissioner must thereupon suspend the judgment debtor's license. Immediately upon the latter coming to terms with the judgment debtor, the judgment creditor by written consent requires the commissioner to revoke the suspension for six months. At the end of six months, if terms are not complied with, suspension against ensues.

If terms are complied with no suspension takes place at all. This consent to operate may cover the whole three years period.

No public officer has any power to deny the judgment creditor's will, whoever that creditor may be. The statute makes it the duty of the Clerk of the Court and the Commissioner to carry out the judgment creditor's will in suspending or not suspending the license. That the Clerk and the Commissioner will be compelled by mandamus to act as the judgment creditor demands is without doubt. Jones v. Harnett, 247 App.Div. 7, 286 N.Y.S. 220, affirmed 271 N.Y. 626, 3 N.E.2d 455.

It is quite true that the judgment debtor need not accept the demand which the judgment creditor may make as a condition of raising the three year ban, but accept he must or lose the right or privilege of operating an automobile on the public highway. If his occupation is that of driving an automobile or truck, as here, this means that his livelihood is in the sole control of the judgment creditor.

Under this statute all pretense of the exercise of the police power of the State for the protection of the public using the highways by suspending the license for three years must be deemed to be abandoned.

The ultimate power of suspension is exclusively vested in the discretion of a private citizen.

Moreover, the private citizen may at some time be not a citizen at all but the worst felon out of prison, for his right to sue is not lost except in case of life imprisonment. Section 511, N. Y. Penal Law, Consol. Laws, c. 40.

Statutes are to be construed by what is possible under them. People v. C. Klinck Packing Company, 214 N.Y. 121, 139, 108 N.E. 278, Ann.Cas.1916D, 1051.

This statute is unique in delegating its enforcement to unknown private citizens in their discretion and for their own interest, and no case passing a like statute has been found. But authorities have been found analogous in principle.

An act attempting to delegate legislative power even to a public officer to be exercised in his discretion is invalid. People v. C. Klinck Packing Company, 214 N.Y. 121, 138, 108 N.E. 278, Ann.Cas.1916D, 1051, supra.

How much more invalid is the attempt to delegate such power to unknown and

538

unknowable private citizens to be exercised in their discretion.

It is held in substance that the state police power can neither be abdicated nor bargained away and is inalienable even by express grant. Atlantic Coast Line R. Co. v. Goldsboro, 232 U.S. 548, 558, 34 S.Ct. 364, 58 L.Ed. 721.

The State may not surrender or bind itself not to exert its police power. Phillips Petroleum Company v. Jenkins, 297 U.S. 629, 635, 56 S.Ct. 611, 80 L.Ed. 943, also Chicago & A. R. R. Company v. Tranbarger, 238 U.S. 67, 77, 35 S.Ct. 678, 59 L.Ed. 1204.

In Coppage v. Kansas, 236 U.S. 1, 35 S. Ct. 240, 59 L.Ed. 441, L.R.A.1915C, 960, it was held in substance that a statutory provision which is not a legitimate police regulation cannot be made such by being placed in the same act with a police regulation or by being enacted under a title that declares a purpose which would be a proper object for the exercise of that power.

In Hennington v. Georgia, 163 U.S. 299, 304, 16 S.Ct. 1086, 41 L.Ed. 166, it was held that where a state statute purporting to be enacted under the police power of the state has no real or substantial relation to the object sought, or is a palpable invasion of the rights secured by fundamental law, it is invalid.

In Gulf, C. & S. F. Railway Co. v. Ellis, 165 U.S. 150, 17 S.Ct. 255, 41 L.Ed. 666, it was decided that a statute which is merely to compel the payment of an indebtedness does not come within the scope of the police power.

It seems reasonably clear, therefore, that Section 94-b is not a valid exercise of the police power of the State.

By itself, the question of whether or not Section 94-b is a valid exercise of State Police Power might not present a Federal question and could not, therefore, be decided here if it were the sole question for decision. But where a federal question is presented, the Court has jurisdiction to decide the state questions.

In Greene v. Louisville & I. Railway Company, 244 U.S. 499, 37 S.Ct. 673, 61 L.Ed. 1280, Ann.Cas.1917E, 88, the head-note says: "In a case in which the jurisdiction of the District Court is properly invoked upon a substantial controversy arising under the Constitution of the United States, the jurisdiction of that court, and of this court on appeal, extends to the de-

termination of all questions involved, including questions of state law, irrespective of the disposition that may be made of the federal question and of whether it be found necessary to decide it at all."

See also Chicago G. W. R. Co. v. Kendall, 266 U.S. 94, 45 S.Ct. 55, 69 L.Ed. 183; Louisville & N. Railway Co. v. Garrett, 231 U.S. 298, 34 S.Ct. 48, 58 L.Ed. 229.

The Federal question here is whether or not section 94-b violates any provision of the Federal Constitution or of laws enacted under power delegated exclusively to the Federal Government.

The decision here might rest upon the invalidity of Section 94-b as an exercise of State police power.

But the section also invades the field of bankruptcy delegated by the U. S. Constitution to the Federal sovereignty.

It is a transparent attempt by the State to provide a means by which the private citizen may, in violation of the bankruptcy laws of the United States, collect his judgment in whole or in part from one and an unknown class of persons, viz., those licensed to operate a motor vehicle on those highways against whom a negligence judgment arising from the operation of such motor vehicle has been recovered and remains unpaid, which judgment is discharged under the bankruptcy laws or will be discharged.

The Statute expressly says that the license when suspended at the judgment creditor's discretion "shall remain so suspended * * * while any such judgment or judgments remain unstayed, unsatisfied and subsisting, either until said judgment or judgments are satisfied or discharged, *except by a discharge in bankruptcy,* to the extent * * *."

In other words, it is an attempt on the part of the one state to withdraw from the Federal Government, for the benefit of a limited class of persons, a portion of the bankruptcy power delegated by the States to the Federal Government in the Constitution and thereby destroy the uniformity of the bankruptcy laws, so far as the State of New York is concerned. One of the functions of that Federal Power under the Constitution is to declare what judgments are dischargeable and to provide for their discharge.

When the bankrupt is discharged from his debts under the Federal Bankruptcy Law, no state has power to make any sanc-

tions or procedure by which a discharged judgment may nevertheless be collected under whatever guise that sanction or procedure may be dressed.

When a state by statute, not a valid exercise of police power, attempts to do so, its statute invades the Federal field of bankruptcy, and is in conflict with the Federal Constitutional power.

In Gilbett's Collier on Bankruptcy, 4th Ed., at page 2 it is said: "The bankruptcy act having been adopted by Congress under the constitutional delegation of power is the supreme law of the land and its provisions are paramount to any state statute."

Numerous authorities might be cited. The following suffices: Local Loan Company v. Hunt, 292 U.S. 234, 244, 245, 54 S.Ct. 695, 78 L.Ed. 1230, 93 A.L.R. 195.

That the discharge of bankrupts from dischargeable debts is a matter of public interest was declared in Hanover National Bank v. Moyses, 186 U.S. 181, at page 192, 22 S.Ct. 857, at page 862, 46 L.Ed. 1113, where the Court said: "The determination of the status of the honest and unfortunate debtor by his liberation from encumbrance on future exertion is matter of public concern, and Congress has power to accomplish it throughout the United States by proceedings at the debtor's domicil."

To the same effect are: Williams v. United States Fidelity & Guaranty Company, 236 U.S. 549, 555-557, 35 S.Ct. 289, 59 L.Ed. 713; Local Loan Company v. Hunt, 292 U.S. 234, 244, 54 S.Ct. 695, 78 L.Ed. 1230, 93 A.L.R. 195, supra.

Courts are not to be influenced by the hardship which some innocent person may suffer because judgments recovered against negligent operators of automobiles are dischargeable in bankruptcy and are, therefore, uncollectible.

The remedy lies with Congress which can make such judgments non-dischargeable, not with the Courts or the State Legislature.

It is said in the majority opinion that the provisions placed in Section 94-b in 1936 empowering the judgment creditor to require the Commissioner to give permission for the debtor to operate his automobile for six months and thereafter until the creditor withdraws the permission, and the 1939 insertion which together with the 1936 provision give the creditors sole power to start or not start the suspension proceedings, may be entirely stricken out of the statute by decision of this Court and still leave the remainder of the section valid and constitutional.

The majority opinion does not say that these 1936 and 1939 provisions are unconstitutional but holds such decision not necessary because they may be stricken out and leave a valid and constitutional remainder of the section.

The writer cannot concur in this view.

It is, of course, well recognized, that if some part or parts of a statutory scheme or regulation is or are unconstitutional and readily separable and the general scheme and regulation as intended by the Legislature remains unimpaired, such part or parts may be stricken out and the remainder of the statute held valid.

Such is the effect of the authorities cited in the majority opinion.

Reference to one will illustrate this. People ex rel. Alpha P. C. Company v. Knapp, 230 N.Y. 48, 129 N.E. 202, was concerned with a revenue act.

The Court there found a condemned part easily separable and said, 230 N.Y. at page 62, 129 N.E. at page 207: "Thus viewing it, I cannot doubt that the exclusion of interest on intangibles will leave the *essence of the scheme intact.*"

The other cases are generally of like nature.

The teaching of these cases is that only where the general scheme and intent of the statute is not impaired, separable parts not constitutional may be stricken out and the remaining held valid.

These cases are not controlling here because here we do not have any such statute as those there involved and because here, after the elimination of the condemned parts, the essence of the statutory scheme does not remain intact.

In statutory construction it is the duty of the Courts to find and give effect to the legislative intent. Matter of Hering, 196 N.Y. 218, 221, 89 N.E. 450; Osborne v. International R. Co., 226 N.Y. 421, 425, 123 N.E. 849; People ex rel. H. H. Babcock Co. v. Law, 209 App.Div. 526, 204 N.Y.S. 459.

Courts will assume that legislatures in passing an amendment to a statute intended to effect such material change as is indicated by the amendment, otherwise the legislation would be nugatory. People ex rel. Sheldon v. Board of Appeals, 234 N.Y. 484, 138 N.E. 416.

This Section 94-b is not a complicated taxing act as in some of the cases referred to in the majority opinion, nor a complex regulatory act as in Buffalo Gravel Corp. v. Moore, 201 App.Div. 242, 194 N.Y.S. 225. This act is an integral and indivisible unity. It is but one thing. It has but one object, viz., a statutory scheme by which the negligence judgment creditor may collect his judgment, which scheme places all power of starting, stopping, and restarting the statutory machine under exclusive control of the creditor and provides that the Court Clerk and Commissioner can act only as he commands, all of which is but a statutory scheme by which the negligence creditor may collect a debt dischargeable in bankruptcy.

That the legislature meant it so also admits of no doubt, for in 1936 and 1939 it made the changes (including re-enactment in 1939) deliberately and intentionally changing to such an act as above outlined, from an act providing for mandatory automatic suspension of a defaulting judgment debtor's license forever (later changed to three years) over which suspension the judgment creditor had not one iota of power or control.

When the part of the statute found unconstitutional is so connected with the general scope and purpose of the legislation that its imperfections destroy the latter, it cannot be eliminated and the statute as a whole must fall. People v. C. Klinck Packing Company, 214 N.Y. 121, 140, 108 N.E. 278, Ann.Cas.1916D, 1051, supra.

Where the invalid is so commingled with the valid, is so large and essential a part of the general scheme that revision is impossible, the statute as a whole is invalid. Meyer v. Wells Fargo & Company, 223 U. S. 298, 32 S.Ct. 218, 56 L.Ed. 445, cited with approval in People ex rel. Alpha P. C. Company v. Knapp, 230 N.Y. 48, 60, 129 N.E. 202, supra; Ives v. South Buffalo Railway Company, 201 N.Y. 271, 317, 94 N.E. 431, 34 L.R.A., N.S., 162, Ann.Cas.1912B, 156.

An interesting discussion of the difficulties of attempting to separate condemned parts in a statute devoted to a limited object is contained in the dissenting opinion of Judges Kellogg & O'Brien in People v. Mancuso, 255 N.Y. 463, 487, 175 N.E. 177, 186, 76 A.L.R. 514, where the dissenting Judges held: "Nevertheless the two parts, valid and invalid must be 'capable of separation' (Albany County Supervisors v. Stanley, supra, 105 U.S. [305] page 312, 26

L.Ed. 1044); the valid part will be retained only 'provided the allowed and prohibited parts are severable' (Keokuk Northern Line Packet Company v. Keokuk, 95 U.S. 80, 89, 24 L.Ed. 377); it will be retained only if the unconstitutional part is clearly 'separable' (Berea College v. Kentucky [211 U.S. 45, 29 S.Ct. 33, 53 L.Ed. 81], supra; Huntington v. Worthen [120 U.S. 97, 7 S.Ct. 469, 30 L.Ed. 588], supra). In all the cases cited, and in many more, where a constitutional provision has been 'separated' and saved, although contained in the same clause with an unconstitutional provision, the statutes considered have been of wide application, comprehending as the subjects of a tax, a prohibition, or a regulation, nontaxable properties or matter incapable of prohibition, or regulation by the enacting state, as well as properties or matters properly the subject of its enacting powers. The provisions allowed to remain have by their terms covered permissible subjects; subjects forbidden, by reason of the Constitution, have merely been released from statutory coverage."

If the condemned parts are stricken out of Section 94-b, it does not leave the "essence of the scheme intact" as in People ex rel. Alpha P. C. Company v. Knapp, 230 N.Y. 48, 129 N.E. 202, supra. On the contrary, it completely destroys the intended statutory scheme.

What is left of the Section is not the statutory scheme now embodied in the statute, but it happens to be like the scheme of the statute as it was before 1936. This scheme the majority of the Court approve and hold may be saved and made effective as a laudable statute.

But if this is done, gone are all such rules of construction as that it is the duty of the Courts to find and give effect to the legislative intent, which is here so manifest; that when the legislature amends a statute it intends to make such material change as is indicated by the statute; that a statute will not survive the excision of unconstitutional parts if it is apparent that the legislature would not have enacted it with the invalid parts out of it; that courts can only separate and strike out parts of a statute as unconstitutional and hold the remainder of the statute valid if that remainder embodies and preserves the essence of the general scheme and purpose of the statute.

How then can it reasonably be said here that the condemned parts are separable and

that what remains embodies the "essence of the scheme intact"?

In short, the statute is one thing as it stands. To strike out the condemned parts is to change the statute to something quite different.

For the Court to strike out the condemned parts and thereby change the statute into something not intended or contemplated by the legislature in 1936 and 1939 borders on judicial legislation. It is an invasion by the judicial power of the governmental field reserved for the legislative power.

It is in effect saying to the State Legislature that it cannot have the statute that it deliberately created by amendment in 1936 and by re-enactment in 1939 with further change, but it can have, and must have, a statute which the Court approves as a salutary statute but which the legislature deliberately discarded and abandoned in 1936 and 1939.

It matters not that when the legislature next meets it has power to repeal the court-approved statute and enact such statute as it pleases. It is no less an invasion during the interim.

This is not a state court passing on a state statute challenged as violating the state constitution.

This is a federal court invoked to determine whether or not a state statute violates the Federal Constitution.

The writer cannot concur in the majority opinion and holds that the statute is a unity and inseparable, is unconstitutional and void and its enforcement should be restrained.